UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD MERINO, DANY CUX BATEN, ELIAS ANTONIO HERNANDEZ, and JORGE OREA PAEZ, individually and on behalf of all others similarly situated

Plaintiffs,

–against –

BEVERAGE PLUS AMERICA CORP., SMC USA CORP., YUN S. CHO, GRAND BEVERAGE CORP. and YUN C. CHO,

Defendants.

ECF CASE

10 Civ. 0706 (JSR)

DEFENDANTS' RESPONSE TO Plaintiffs' Motion for damages and class notice

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _____

Defendants, YUN S. CHO, by PRO SE, makes the following response to Plaintiffs' Motion for damages and class notice required by the Federal Court's Order of September 9, 2011 (Doc. #88) as upon information and belief:

### I. Defendant's Response to Plaintiffs' Motion for damages and class notice

1. I do not have anyone who has complaint concerning wages until this action occur.

2. I paid to Plaintiffs' a minimum wage, overtime and spread of hours pay as Plaintiffs Exhibit 12 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice.

3. A Temporary Restraining Order for Richard Merino as Plaintiffs' Exhibit 1, 2 and 3 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice was denied by Federal Judge, Jed S. Rakoff on April 26, 2010

4. The affirmation of Jorge Orea Paez as Plaintiffs Exhibit 4 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice is not correct.
Jorge Orea Paez worked between Jan. 2, 2007 and Feb. 20, 2009 as DEF. 00006 of Exhibit 12 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice
(Attached Exhibit "A")

5. The affirmation of Elias Antonio Hernandez as Plaintiffs' Exhibit 6 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice is not correct.
Elias Antonio Hernandez worked between Jul. 15, 2008 and Jan. 15, 2009 as DEF. 00004 of

Exhibit 12 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice
(Attached Exhibit "B")


6.   The affirmation of Paulo Morales as Plaintiffs' Exhibit 9 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice is not correct.
Paulo Morales worked between Sep. 20, 2006 and Oct. 31, 2009 as DEF. 00211 of Exhibit 12 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice
(Attached Exhibit "C")


7.   The affirmation of Primitivo Aguilar as Plaintiffs' Exhibit 10 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice is not correct.
Primitivo Aguilar worked as a helper about 2 months, May and June in 2007.
And he was arrested for an assault charges in the bar and he was fired next week because he did not show up for work again after he got drunk.
(Attached Exhibit "D")


8.   The Ticket Details and Violation Copy of Plaintiffs' Exhibit 11 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice was produced by me and was paid by me not by the driver.
(Attached Exhibit "E")


9.   According to Plaintiffs' Exhibit 13 through 23 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice, Plaintiffs calculated by their emotional value for the wages even though Plaintiffs taken into evidence of Plaintiffs' Exhibit 12 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice as explained in personnel record, weekly pay was calculated by an hour including spread hours and hourly rate is over the minimum wage as agreed upon hiring each worker and yet plaintiffs' lawyer sets hourly rate as their convenience.
Moreover, Plaintiffs only presented with Yun S. Cho's personnel records that can not prove the defendant have any minimum wage violations, unlawful deductions, overtime and spread of hours violations for money damages and plaintiffs has failed to provide genuineness of documents which shows plaintiffs did not received minimum wage and overtime payment.
(Attached Exhibit "F")


10. According to Plaintiffs' Exhibit 24 of Plaintiffs' Memorandum of law in support of Plaintiff' motion for damages and class notice, it is irrelevant to support plaintiffs' motion for damages and class notice because these partial EBT has limited to only certain circumstance and criteria.
(Attached Exhibit "G")

Therefore, I, individual defendant, should not be held liable against the Plaintiffs.

Defendants reserve the right to have supplement these responses upon receipt of additional and/or continuing information.

WHEREFORE, I respectfully request an order granting to dismiss the plaintiffs' motion.

Dated: Maspeth, New York
      Oct. 26, 2010

Signature of Yun S. Cho
5887 55th Street
Maspeth, NY 11378
Tel: (718) 552-9055
Fax: (718) 552-9056

TO: Maia Goodell
    Scott Michels
    Vladeck, Waldman, Elias & Engelhard, P.C.
    Attorneys for Plaintiffs
    1501 Broadway, Suite 800
    New York, NY 10036
    (212) 403-7300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------

RICHARD MERINO, DANY CUX BATEN, ELIAS ANTONIO
HERNANDEZ, and JORGE OREA PAEZ, individually and on
behalf of all others similarly situated,

Plaintiffs,

     – against –

BEVERAGE PLUS AMERICA CORP., SMC USA CORP.,
YUN S. CHO, GRAND BEVERAGE CORP. and YUN C. CHO,

Defendants.

ECF CASE

10 Civ. 0706 (JSR)

AFFIRMATION OF

SERVICE

-----------------------------------------------------------------

    I, Yun S. Cho and Yun C. Cho, declare under penalty of perjury that I have served a copy of the attached Response to Plaintiffs' Motion for damages and class notice upon Maia Goodell; Vladeck, waldman, Elias & Engelhard, P.C. whose address is 1501 Broadway, Suite 800, New York, NY 10036
By Certified Mail in a sealed envelope, with postage prepaid thereon, in an official depository of the United States Postal Service within the State of New York, addressed to the last known addressee.

Dated: Maspeth, New York
      Oct. 27, 2011

Signature of Yun S. Cho & Yun C. Cho
5887 55th Street
Maspeth, NY 11378
Tel: (718) 552-9055
Fax: (718) 552-9056

**U.S. Postal Service**₁₃
**CERTIFIED MAIL**₁₃ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

NEW YORK NY 10036

| | | |
|---|---|---|
| Postage | $ | $5.95 | 0020 |
| Certified Fee | | $2.85 | 02 |
| Return Receipt Fee (Endorsement Required) | | $0.00 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $8.80 | 10/27/2011 |

7011 0110 0001 0980 6498

OFFICIAL USE

Sent To *Maria Goodell, esg. Vladeck, Waldman etc P.C*
Street, Apt. No.; or PO Box No. *1501 BROADWAY, SUITE 800*
City, State, ZIP+4 *NEW YORK, NY 10036*

PS Form 3800, August 2006          See Reverse for Instructions

---

```
=======================================
        LITTLE NECK STATION
         FLUSHING, New York
            113629997
          3568880020-0099
10/27/2011  (800)275-8777 01:47:43 PM
=======================================
          ===== Sales Receipt =====
Product               Sale Unit    Final
Description            Qty  Price   Price
=======================================
NEW YORK NY 10036                   $5.95
Zone-1 Priority Mail
2 lb.  3.90 oz.
Expected Delivery: Fri 10/28/11
   Certified                        $2.85
   Label #:       70110110000109806498
   Customer Postage               -$5.60
                                =========
   Issue PVI:                      $3.20

28c Stamp       20    $0.28        $5.60
Dom. Money Order                  $36.00
19050048090
Domestic Money Order Fee           $1.10
     · Subtotal:                   $37.10
                                =========
   Total:                         $45.90

Paid by:
Cash                              $60.00
Change Due:                      -$14.10

Order stamps at usps.com/shop or
call 1-800-Stamp24.  Go to
usps.com/clicknship to print
shipping labels with postage.  For
other information call
1-800-ASK-USPS.
************************************
************************************
Get your mail when and where you
want it with a secure Post Office
Box. Sign up for a box online at
usps.com/poboxes.
************************************
************************************

Bill#:1000100745818
Clerk:02
```

## PERSONEL RECORD

Name: Mr./Ms. _Jorge Oreo Páez_   Tel: (___) _____
                                  Cell: (_917_) _267-2609_

Address: _97-41 7t st 2FL_

_Ozone Park, NY 11016_

D. O. B.: _/ / /_   S. S. N.: _+ , ._
            Mo  Date  Yr

Driver License Number: _____

No. Of Dependents: _3_

Date Started/Terminated: _1/2/07_ - _2/20/09_

Position: _Driver_

Pay Rate/Hr/Date: $_45_ (_P2_) _1/02/07_, $_480_ (_7¹⁵_) _6/2/07_
              $_50_ (_7¹⁵_) _9/07/08_ $_570_ (_8²¹_) _6/2/08_

$_____/_____, $_____/_____

Remarks: _40 + 5×15 +2 = 49.5_ / _40 + 8×15 + 3 = 55._
         _40 + 10×15 + 4 = 59.00_ / _40 + 8×15 + 4 = 56._

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RICHARD MERINO, DANY CUX BATEN, ELIAS
ANTONIO HERNANDEZ, and JORGE OREA PAEZ,
individualmente y a favor de otros situados similarmente,

                Quejantes,

      - against -

BEVERAGE PLUS AMERICA CORP., SMC USA
CORP., YUN S. CHO, and GRAND BEVERAGE CORP.

                Defendientes.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Civ 0706 (JSR)

ECF CASE

AFIRMACION DE
JORGE OREA PAEZ

       Jorge Orea Paez, bajo pena de perjurio, afirma y declara lo siguiente:

       1.     Soy un quejante en este caso y doy esta afirmacion en apoyo a la mocion de la clase de quejantes para la certificacion preliminaria bajo la ley de estandares laborales justos, para el aviso por parte de la Corte a las personas en situacion similar, y para la descubierta rapida.

       2.     Trabaje para los defendientes desde enero 2006 hasta febrero 2009. Trabaje para los defendientes como chofer.

       3.     Como los choferes y ayudantes todos trabajaban en el mismo almacen y tenian un horario similar, los veia llegar al trabajo y salir del trabajo, les vi cumpliendo sus tareas, y vi como fueron pagados.   Yun S. Cho y los gerentes de los defendientes tenian en occasion reuniones del grupo  con todos los choferes y ayudantes para darnos instrucciones sobre nuestras responsabilidades de trabajo y/o nuestras horas y pago.  Ademas nosotros los choferes y ayudantes habitualmente nos hablabamos entre nosotros acerca de nuestras responsabilidades de trabajo, nuestros pagos y las horas que trabajabamos.

4.       Los choferes al igual que los ayudantes eramos responsables para entregar cajas de bebidas a los clientes de los defendientes desde el almacen de los defendientes en Queens.  En cualquier momento los defendientes empleaban aproximamente cuatro choferes, al igual que cuatro o cinco ayudantes para trabajar con los choferes.

5.       Mis responsabilidades como chofer fueron organizar los ordenes, cargar los caminiones con cajas de bebidas, transporter los productos, y descargarlos a las tiendas de los defendientes.   Como chofer era responsible de manejar el camion hasta las tiendas de los clientes; los ayudantes me ayudaban a cargar el camion y me acompanaban a las tiendas de los clientes para ayudar en hacer las entregas.

6.       Las responsabilidades de los otros choferes y ayudantes fueron esencialmente lo mismo que las mias.

7.       Segun mi observacion muchos choferes y ayudantes trabajaron para los defendientes por solo un corto tiempo.  En el tiempo en lo cual trabajaba para los defendientes, habian por lo menos 30 otras personas quienes trabajaron como choferes, y  por lo menos 30 otras personas quienes trabajaron como ayudantes.

8.       Yo hice entregas a las tiendas de los clientes en Manhattan, Brooklyn y Queens.  Nunca hice entregas a tiendas fuera del Estado de New York.

9.       Cuando empeze a trabajar para los defendientes, trabajaba desde las 7:00 am hasta aproximamente las 5:00 pm.   Desde el 2008, usualmente trabajaba hasta aproximamente las 6:00 pm.  Trabajaba cinco dias a la semana y trabajaba mas de cuarenta horas cada semana.  Nunca fue pagado las horas extras.

10.      Cuando empeze a trabajar para los defendientes en enero del 2006, ganaba $430 por semana.  Despues de cinco meses mi pago aumento a $450.  Aproximamente seis

meses mas tarde mi pago aumento a $480 por semana, y aproximamente seis meses despues de eso my pago aumento a $510.  LLegando al 2008, recibia $530 por semana, lo que yo ganaba hasta que me despidieron.

11.    Me pagaban una vez por semana.  Al fin de la semana, Yun S. Cho o uno de los gerentes de los defendientes me daba mi pago semanal en efectivo.  Los otros choferes y ayudantes tambien fueron pagados al fin de cada semana en efectivo.

12.    Segun mi observacion los otros choferes y ayudantes trabajaban un horario similar al mio.  He hablado con otros choferes y ayudantes sobre los pagos de ellos; cada uno me dijo que nunca recibieron pago para las horas extra.

13.    Mi gerente fue Yun S. Cho.  Es el que me contrato y me despidio. Tambien tenia otro gerente llamado Rafael.

14.    En el momento en que fui despedido, los defendientes tenian cuatro camiones para hacer entregas.

Declaro bajo pena de perjurio que todo lo antecedente es la verdad y corecto.

Ejecutado el 5/2/10   en NEW YORK.

Jorge Orea Paez

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| RICHARD MERINO, DANY CUX BATEN, ELIAS ANTONIO HERNANDEZ, and JORGE OREA PAEZ, and, individually and on behalf of all others similarly situated, | 10 Civ 0706 (JSR) |
| Plaintiffs, | ECF CASE |
| - against - | AFFIRMATION OF <br> <u>JORGE OREA PAZ</u> |
| BEVERAGE PLUS AMERICA CORP., SMC USA CORP., YUN S. CHO, and GRAND BEVERAGE CORP. | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Jorge Orea Paez, under penalty of perjury, affirms and states as follows:

1.    I am a plaintiff in the above-captioned case and I submit this affirmation in support of Class Plaintiffs' Motion for Preliminary Certification Pursuant to the Fair Labor Standards Act, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery.

2.    I worked for defendants from January 2006 until February 2009.  I worked for defendants as a driver.

3.    Because the drivers and helpers all worked in the same warehouse facility and had similar hours, I saw them arrive and leave work, saw them performing their duties, and saw how they were paid.  Yun S. Cho and defendants' managers occasionally had group meetings with all of the drivers and helpers to give us instructions about our job duties and/or hours and pay.  In addition, we drivers and helpers regularly spoke to each other about our job duties, pay and the hours we worked.

266416 v1

4.      Both drivers and helpers were responsible for delivering boxes of beverage products to defendants' customers from defendants' warehouse facility in Queens.  At any given time, defendants employed approximately four drivers, as well as four or five helpers to work with the drivers.

5.      My duties as a driver were to organize orders, load delivery trucks with boxes of beverage products, transport the products, and unload them at the customers' stores.  As a driver, I was responsible for driving the delivery truck to the customers' stores; the helpers would help load the truck and accompany me to the customers' stores to assist in making the deliveries.

6.      The duties of other drivers and helpers were substantially the same as mine.

7.      In my observation, many drivers and helpers worked for defendants for only a short time.  During the time I worked for defendants, there were at least 30 other people who had worked as drivers, and at least 30 other people who had worked as helpers.

8.      I made deliveries to customers' stores in Manhattan, Brooklyn and Queens.  I never made deliveries to stores outside of the State of New York.

9.      When I started working for defendants, I worked from 7:00 am to approximately 5:00 pm.  Since 2008, I usually worked until approximately 6:00 pm.  I worked five days a week and worked more than forty hours each week.  I was never paid overtime.

10.     When I started working for defendants in January 2006, I earned $430 per week.  After five months my weekly pay increased to $450.  Approximately six months later my

266416 v1

pay increased to $480 per week, and approximately six months after that my pay increased to $510. By 2008, I was receiving $530 per week, which is what I earned until I was fired.

11.     I was paid once a week. At the end of the week, Yun S. Cho or one of defendants' managers would give me my weekly pay in cash. Other drivers and helpers were also paid at the end of each week in cash.

12.     In my observation, the other drivers and helpers worked similar hours to me. I have spoken to other drivers and helpers about their pay; each of them told me that they had never been paid overtime.

13.     My manager was Yun S. Cho. He is the one who hired me and fired me. I also had another manager named Rafael.

14.     At the time I was fired, defendants had four delivery trucks.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 2, 2010 in New York.

266416 v1

EXHIBIT "B"

## PERSONEL RECORD

Name: (Mr)/Ms. _Elias Hernandez_   Tel: ( __ ) _____
                                    Cell: (917) 459 - 0997

Address: ___96-3) 121st_____

_____

D. O. B.: ___/___/___   S. S. N.: ___-___-___
           Mo  Date  Yr

Driver License Number: _____

No. Of Dependents: _____

Date Started/Terminated: _7/15/08_ - _1/16/09_

Position: _Driver_____

Pay Rate/Hr/Date: $(5-(7²) 7/11/08, $_____/_____

          $_____/_____, $_____/_____

          $_____/_____, $_____/_____

Remarks: _10hr + $215 +4 = 5hhr_____

_____

_____

_____

DEF.00004

# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RICHARD MERINO, DANY CUX BATEN, ELIAS
ANTONIO HERNANDEZ, and JORGE OREA PAEZ,
individualmente y a favor de otros situados similarmente,                10 Civ 0706 (JSR)

                        Quejantes,                ECF CASE

        - against -                AFIRMACION DE
                               ELIAS ANTONIO
BEVERAGE PLUS AMERICA CORP., SMC USA                HERNANDEZ
CORP., YUN S. CHO, and GRAND BEVERAGE CORP.

                    Defendientes.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Elias Antonio Hernandez, bajo pena de perjurio, afirma y declara lo siguiente:

        1.      Soy un quejante en este caso y doy esta afirmacion en apoyo a la mocion de la clase de quejantes para la certificacion preliminaria bajo la ley de estandares laborales justos, para el aviso por parte de la Corte a las personas en situacion similar, y para la descubierta rapida.

        2.      Trabaje para los defendientes aproximamente desde el 15 abril 2008 hasta el 15 enero 2009.  Trabaje para los defendientes como chofer.  Quando fue despedido el gerente me dijo que no me necesitaba; no me dio otra razon.

        3.      Como los choferes y ayudantes todos trabajaban en el mismo almacen y tenian  un horario similar, los veia llegar al trabjo y salir del trabajo, les vi cumpliendo sus trabajos, y vi como fueron pagados.  Yun S. Cho y los gerentes de los defendientes a ciertas ocasiones tenian reuniones de grupo con todos los choferes y ayudantes para darnos instrucciones sobre nuestras responsabilidades de trabajo y/o nuestras horas y pago.Ademas

266328 v1

nosotros los choferes y ayudantes hablabamos uno con el otro a cada rato de nuestras responsabilidades de trabajo, del pago y de las horas que trabajabamos.

4.     Ambos los choferes y los ayudantes fuimos responsables para entregar cajas de bebidas  a los clientes de los defendientes, desde el almacen de los defendientes en Queens.  En cualquier momento, los defendientes empleaban aproximamente cuatro choferes, al igual que cuatro o cinco ayudantes para trabajar con los choferes.

5.     Mis responsabilidades como chofer fueron : organizar los ordenes, cargar los camiones con cajas de bebidas, transporter los productos, y descargarlos a las tiendas de los clientes.  Como chofer, fue responsable para manejar el camion hasta las tiendas de los clientes; los ayudantes ayudaban a cargar el camion y me acompanaban a las tiendas de los clientes para ayudar en hacer las entregas.

6.     Las responsabilidades de los otros choferes y ayudantes fueron basicamente las mismas que las mias.

7.     Segun mi observacion muchos choferes y ayudantes trabajaron para los defendientes por solo un rato breve.

8.     Hacia entregas a las tiendas de los clientes en Manhattan, Brooklyn y Queens.  Nunca  hice entregas fuera del Estado de New York.

9.     Empezaba el trabajo a las 7:00 am y trabajaba hasta las 5:00 pm o mas tarde.  En el verano yo trabajaba normalmente hasta las 6:00 o 7:00 pm, y a veces hast a las 8:00 pm.  Si no habia bastante trabajo yo salia alrededor de las 5:00 pm, pero eso no ocurria mas de una vez a la semana.

10.     Yo trabajaba mas de cuarenta horas cada semana, pero nunca fue pagado las horas extras.

11.     Yo ganaba $480 la semana, menos cualquier "tickets" de estacionamiento que habia recibido.   Usualmente ganaba $385 la semana despues de la deduccion por los "tickets" por los defendientes.   Recibia alrededor de un "ticket" por semana.   No podia hacer entregas en el Midtown Manhattan sin recibir "tickets" de estacionamiento.

12.     Me pagaban una vez por semana.   Al fin de la semana Yun S. Cho o uno de los gerentes de los defendientes me daba mi pago semanal en efectivo.   Los otros choferes y ayudantes tambien fueron pagados al fin de cada semana en efectivo.

13.     Segun mi observacion los otros choferes y ayudantes trabajaron horas similares al las mias.   Otros trabajadores me han dicho que no recibian el pago de las horas extras.

14.     Mi gerente fue Yun S. Cho.   Es el quien me despidio.   Tambien tenia otro gerente llamado Rafael.

Declaro bajo pena de perjurio que todo lo antecedente es la verdad y corecto.

Ejecutado el  4-30-2010  en  NY       .

_____
Elias Antonio Hernandez

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RICHARD MERINO, DANY CUX BATEN, ELIAS
ANTONIO HERNANDEZ, and JORGE OREA PAEZ,
and, individually and on behalf of all others similarly
situated,

                         Plaintiffs,

             - against -

BEVERAGE PLUS AMERICA CORP., SMC USA
CORP., YUN S. CHO, and GRAND BEVERAGE CORP.

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Civ 0706 (JSR)

ECF CASE

AFFIRMATION OF
ELIAS ANTONIO
HERNANDEZ

Elias Antonio Hernandez, under penalty of perjury, affirms and states as follows:

1.     I am a plaintiff in the above-captioned case and I submit this affirmation in support of Class Plaintiffs' Motion for Preliminary Certification Pursuant to the Fair Labor Standards Act, for Court-Facilitated Notice to Similarly Situated Persons, and for Expedited Discovery.

2.     I worked for defendants approximately from April 15, 2008 until January 15, 2009. I worked for defendants as a driver. When I was fired, the manager told me that I was no longer needed; I was not given any other reason.

3.     Because the drivers and helpers all worked in the same warehouse facility and had similar hours, I saw them arrive and leave work, saw them performing their duties, and saw how they were paid. Yun S. Cho and defendants' managers occasionally had group meetings with all of the drivers and helpers to give us instructions about our job duties and/or

266328 v1

hours and pay. In addition, we drivers and helpers regularly spoke to each other about our job duties, pay and the hours we worked.

4.     Both drivers and helpers were responsible for delivering boxes of beverage products to defendants' customers from defendants' warehouse facility in Queens. At any given time, defendants employed approximately four drivers, as well as four or five helpers to work with the drivers.

5.     My duties as a driver were to organize orders, load delivery trucks with boxes of beverage products, transport the products, and unload them at the customers' stores. As a driver, I was responsible for driving the delivery truck to the customers' stores; the helpers would help load the truck and accompany me to the customers' stores to assist in making the deliveries.

6.     The duties of other drivers and helpers were substantially the same as mine.

7.     In my observation, many drivers and helpers worked for defendants for only a short time.

8.     I made deliveries to customers' stores in Manhattan, Brooklyn and Queens. I never made deliveries to stores outside of the State of New York.

9.     I started work at 7:00 am and worked until 5:00 pm or later. In the summer, I usually worked until 6:00 or 7:00 pm, and sometimes until 8:00 pm. If business was not too busy, I left around 5:00 pm, but that did not happen more than once a week.

10.     I worked more than forty hours every week, but was never paid overtime.

11.     I earned $480 per week, minus any parking tickets I received. I usually made $385 per week after defendants' deductions for parking tickets. I received about one

parking ticket per week.  I could not make deliveries in midtown Manhattan without receiving parking tickets.

      12.    I was paid once a week.  At the end of the week, Yun S. Cho or one of defendants' managers would give me my weekly pay in cash.  Other drivers and helpers were also paid at the end of each week in cash.

      13.    In my observation, the other drivers and helpers worked similar hours to me. Other workers have told me that they did not receive overtime.

      14.    My manager was Yun S. Cho.  He is the one who fired me.  I also had another manager named Rafael.

      I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 30, 2010 in New York.

EXHIBIT "C"

## PERSONEL RECORD

Name: Mr./Ms. Paulo G. Morales   Tel: (718) 760 -2180
                                 Cell: (307) 753-2183

Address: 86-22 Doncan Av
         Elmhurst NY 11373

D. O. B.: ___/___/___   S.S. N.: ___ ___ ___
          Mo   Date   Yr

Driver License Number: 630 457-2480

No. Of Dependents: 2 (amoy)

Date Started/Terminated: 9/20/06 - 10/31/06

Position: Driver

Pay Rate/Hr/Date: $480 (73), 9/20/06, $ ___/___

            $ ___/___, $ ___/___

            $ ___/___, $ ___/___

Remarks: co-e(o x)(t + 40-59

         didn't show up for work for 2 days.
         and late for work everyday at least 5 mon.

# EXHIBIT 9

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RICHARD MERINO, DANY CUX BATEN, ELIAS
ANTONIO HERNANDEZ, and JORGE OREA PAEZ, and,
individually and on behalf of all others similarly situated,

                         Plaintiffs,

                 - against -

BEVERAGE PLUS AMERICA CORP., SMC USA CORP.,
YUN S. CHO, and GRAND BEVERAGE CORP.

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Civ 0706 (JSR)

ECF CASE

AFFIRMATION OF
PAULO MORALES

Paulo Morales, under penalty of perjury, affirms and states as follows:

1.      I am an opt-in plaintiff in the above-captioned case and I submit this affirmation in support of Class Plaintiffs' Motion for Damages.

2.      I worked for defendants from approximately March 2006 to August 2006. I worked for defendants as a driver.

3.      Because the drivers and helpers all worked in the same warehouse facility and had similar hours, I saw them arrive and leave work, saw them performing their duties, and saw how they were paid.  Yun S. Cho and defendants' managers occasionally had group meetings with all of the drivers and helpers to give us instructions about our job duties and/or hours and pay.  In addition, we drivers and helpers regularly spoke to each other about our job duties, pay and the hours we worked.

4.      Both drivers and helpers were responsible for delivering boxes of beverage products to defendants' customers from defendants' warehouse facility in Queens.  At any given time, defendants employed approximately four drivers, as well as four or five helpers to work with the drivers.

1

385901 v1

5.      When I was hired, I was told I would be paid a weekly salary.  I never discussed overtime payments with defendants, nor was I told how many hours per week I would be working.  Defendants told me to arrive at work at 7 a.m.  I and the other workers were then required to stay at work until defendants told us we were free to go for the day.

6.      I was never paid overtime.

7.      My salary was $440 per week during my whole time at the company.

8.      I was paid once a week.  At the end of the week, Yun S. Cho or one of defendants' managers would give me my weekly pay in cash.  Other drivers and helpers were also paid at the end of each week in cash.

9.      In my observation, the other drivers and helpers worked similar hours to me.

10.      I have spoken to other drivers and helpers about their pay and learned that other drivers were paid a similar amount to what I was paid.  Each of them told me that they had never been paid overtime.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on _____ in _____, New York.

CORTE DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO SUR DE NUEVA YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RICHARD MERINO, DANY CUX BATEN, ELÍAS
ANTONIO HERNÁNDEZ y JORGE OREA PÁEZ, y, de                          10 Civ 0706 (JSR)
forma individual y en representación de otros situados de
manera similar,
                                                                   ECF CASE
                    Demandantes,
                                                                   AFIRMACIÓN DE
           - contra -                                              PAULO MORALES

BEVERAGE PLUS AMERICA CORP., SMC USA
CORP., YUN S. CHO y GRAND BEVERAGE CORP.

                    Demandados.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Paulo Morales, bajo pena por perjurio, afirma y declara lo siguiente:

1.     Soy un demandante por opción en el caso antes rotulado y presento esta
afirmación en respaldo de la Moción por Daños y Perjuicios de los Demandantes Colectivos.

2.     Trabajé para los demandados aproximadamente hasta Marzo 2006 desde
Agosto 2006.   Trabajé para los demandados como chofer.

3.     Debido a que los choferes y ayudantes todos trabajaban en el mismo
depósito y tenían horarios similares, los vi cuando llegaban y se iban del trabajo, los vi
desempeñarse en sus tareas y vi cómo se les pagaba.   Yun S. Cho y los gerentes de los
demandados en ocasiones tenían reuniones grupales con todos los choferes y los ayudantes para
darnos instrucciones acerca de nuestras responsabilidades laborales y/o de los horarios y salarios.
Además, los choferes y ayudantes regularmente hablábamos entre nosotros acerca de nuestras
responsabilidades laborales, salarios y horarios de trabajo.

4.     Tanto los choferes como los ayudantes éramos responsables de entregar
cajas de productos de bebidas a los clientes de los demandados desde el depósito de los

1

demandados en Queens. En un momento dado, los demandados emplearon aproximadamente a cuatro choferes, así como también a cuatro o cinco ayudantes para que trabajaran con los choferes.

5.      Cuando me contrataron, se me indicó que me pagarían un salario semanal. Nunca discutí los pagos de horas extra con los demandados, ni se me indicó cuántas horas por semana trabajaría. Los demandados me dijeron que debía llegar al trabajo a las 7 a.m. Los otros trabajadores y yo debíamos permanecer en el trabajo hasta que los demandados nos decían que podíamos irnos por ese día.

6.      Nunca me pagaron horas extras.

7.      Mi salario fue $440 semanales durante todo mi tiempo en la compania.

8.      Me pagaban una vez a la semana. Al final de la semana, Yun S. Cho o uno de los gerentes de los demandados me daba mi pago semanal en efectivo. Otros choferes y ayudantes también recibían su pago al final de cada semana en efectivo.

9.      Según lo que observé, los otros choferes y ayudantes trabajaban horarios similares a los míos.

10.     He hablado con otros choferes y ayudantes acerca de su pago y me enteré de que a otros choferes se les pagaba montos similares a los que yo recibía. Cada uno de ellos me dijo que nunca les pagaron horas extras.

Declaro bajo pena por perjurio que lo dicho anteriormente es verdadero y correcto.

Firma _____

Ejecutado el __10/11/11__ en __Queens.__ , Nueva York.

2

EXHIBIT "D"

# EXHIBIT 10

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RICHARD MERINO, DANY CUX BATEN, ELIAS
ANTONIO HERNANDEZ, and JORGE OREA PAEZ,
and, individually and on behalf of all others similarly          10 Civ 0706 (JSR)
situated,
                                                                 ECF CASE
                           Plaintiffs,
                                                                 AFFIRMATION OF
          - against -                                            PRIMITIVO AGUILAR

BEVERAGE PLUS AMERICA CORP., SMC USA
CORP., YUN S. CHO, and GRAND BEVERAGE CORP.

                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Primitivo Aguilar, under penalty of perjury, affirms and states as follows:

        1.      I am an opt-in plaintiff in the above-captioned case and I submit this

affirmation in support of Class Plaintiffs' Motion for Damages.

        2.      I worked for defendants for approximately six months in 2005 or 2006.   I

worked for defendants as a helper.

        3.      Because the drivers and helpers all worked in the same warehouse facility

and had similar hours, I saw them arrive and leave work, saw them performing their duties, and

saw how they were paid.   Yun S. Cho and defendants' managers occasionally had group

meetings with all of the drivers and helpers to give us instructions about our job duties and/or

hours and pay.   In addition, we drivers and helpers regularly spoke to each other about our job

duties, pay and the hours we worked.

        4.      Both drivers and helpers were responsible for delivering boxes of

beverage products to defendants' customers from defendants' warehouse facility in Queens.   At

1

any given time, defendants employed approximately four drivers, as well as four or five helpers to work with the drivers.

5.      When I was hired, I was told I would be paid a weekly salary.  I never discussed overtime payments with defendants, nor was I told how many hours per week I would be working.  Defendants told me to arrive at work at 7 a.m.  I and the other workers were then required to stay at work until defendants told us we were free to go for the day.

6.      I was never paid overtime.

7.      I earned $380 per week during my time at the company.

8.      I was paid once a week.  At the end of the week, Yun S. Cho or one of defendants' managers would give me my weekly pay in cash.  Other drivers and helpers were also paid at the end of each week in cash.

9.      In my observation, the other drivers and helpers worked similar hours to me.

10.      I have spoken to other drivers and helpers about their pay and learned that other drivers were paid a similar amount to what I was paid.  Each of them told me that they had never been paid overtime.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on _____ in _____, New York.

2

CORTE DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO SUR DE NUEVA YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD MERINO, DANY CUX BATEN, ELÍAS
ANTONIO HERNÁNDEZ y JORGE OREA PÁEZ, y, de
forma individual y en representación de otros situados de
manera similar,

                     Demandantes,

        - contra -

BEVERAGE PLUS AMERICA CORP., SMC USA CORP.,
YUN S. CHO y GRAND BEVERAGE CORP.

                    Demandados.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Civ 0706 (JSR)

ECF CASE

AFIRMACIÓN DE
PRIMITIVO AGUILAR

Primitivo Aguilar, bajo pena por perjurio, afirma y declara lo siguiente:

1.      Soy un demandante por opción en el caso antes rotulado y presento esta afirmación en respaldo de la Moción por Daños y Perjuicios de los Demandantes Colectivos.

2.      Trabajé para los demandados aproximadamente seis meses en 2005 o 2006. Trabajé para los demandados como ayudante.

3.      Debido a que los choferes y ayudantes todos trabajaban en el mismo depósito y tenían horarios similares, los vi cuando llegaban y se iban del trabajo, los vi desempeñarse en sus tareas y vi cómo se les pagaba. Yun S. Cho y los gerentes de los demandados en ocasiones tenían reuniones grupales con todos los choferes y los ayudantes para darnos instrucciones acerca de nuestras responsabilidades laborales y/o de los horarios y salarios. Además, los choferes y ayudantes regularmente hablábamos entre nosotros acerca de nuestras responsabilidades laborales, salarios y horarios de trabajo.

4.      Tanto los choferes como los ayudantes éramos responsables de entregar cajas de productos de bebidas a los clientes de los demandados desde el depósito de los

1

384856 v2

demandados en Queens.  En un momento dado, los demandados emplearon aproximadamente a cuatro choferes, así como también a cuatro o cinco ayudantes para que trabajaran con los choferes.

       5.     Cuando me contrataron, se me indicó que me pagarían un salario semanal. Nunca discutí los pagos de horas extra con los demandados, ni se me indicó cuántas horas por semana trabajaría.  Los demandados me dijeron que debía llegar al trabajo a las 7 a.m.  Los otros trabajadores y yo debíamos permanecer en el trabajo hasta que los demandados nos decían que podíamos irnos por ese día.

       6.     Nunca me pagaron horas extras.

       7.     Mi salario fue $380 semanal durante todo mi tiempo en la compañía.

       8.     Me pagaban una vez a la semana.  Al final de la semana, Yun S. Cho o uno de los gerentes de los demandados me daba mi pago semanal en efectivo.  Otros choferes y ayudantes también recibían su pago al final de cada semana en efectivo.

       9.     Según lo que observé, los otros choferes y ayudantes trabajaban horarios similares a los míos.

       10.    He hablado con otros choferes y ayudantes acerca de su pago y me enteré de que a otros choferes se les pagaba montos similares a los que yo recibía.  Cada uno de ellos me dijo que nunca les pagaron horas extras.

       Declaro bajo pena por perjurio que lo dicho anteriormente es verdadero y correcto.

Firma _PRIMITIVO. Aguilar -F_

Ejecutado el _10/13/2011_ en _Queens_, Nueva York.

2

EXHIBIT "E"

# EXHIBIT 11

Back to NYCServ                                    The Official New York City Web Site

# Check Parking Ticket Status | Ticket Details

**Vehicle Details**

| | | | |
|---|---|---|---|
| Plate: | 63977JS | Type: | Commercial Vehicle |
| State: | New York | Make: | MITSU |

**Ticket Details as of Monday, Apr. 19, 2010 04:36 PM**

| | | | | |
|---|---|---|---|---|
| Ticket #: | 7923297265 | Fine: | $ | 65.00 |
| Issued On: | 04/10/09 09:16 AM | Penalty: | +$ | .0.00 |
| Ticket Code: | 42 | Interest: | +$ | 0.00 |
| Description: | EXPIRED MUNI METER-COMM METER ZONE | Reduction: | - $ | 0.00 |
| Location: | At the intersection of S 40FT W/OF BROADWAY Manhattan | Paid: | - $ | 65.00 |
| | | Balance: | $ | 0.00 |

CANCEL          SEARCH FOR PARKING TICKETS

Go to NYC.gov Home | Finance Home | Health | Consumer Affairs | Environmental Protection | Contact Us | FAQs | Privacy Statement | Site Map | Search

Copyright © 2001 New York City D.O.F  All rights reserved. - Contact NYCServ (A new window will open)

DEF. 00137

PVO Ticket Details

Back to NYCServ ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● *The Official New York City Web Site*

## Check Parking Ticket Status | Ticket Details

**Vehicle Details**

| | | | |
|---|---|---|---|
| Plate: | 63977JS | Type: | Commercial Vehicle |
| State: | New York | Make: | MITSU |

**Ticket Details as of Monday, Apr. 19, 2010 04:43 PM**

| | | | | |
|---|---|---|---|---|
| Ticket #: | 7871762230 | Fine: | $ | 115.00 |
| Issued On: | 12/24/09 09:42 AM | Penalty: | +$ | 0.00 |
| Ticket Code: | 14 | Interest: | +$ | 0.00 |
| Description: | NO STANDING-DAY/TIME LIMITS | Reduction: | - $ | 0.00 |
| Location: | In front of | Paid: | - $. | 115.00 |
| | 40 W 23RD ST | | | |
| | Manhattan | Balance: | $ | 0.00 |

CANCEL          SEARCH FOR PARKING TICKETS

Go to NYC.gov Home  |  Finance Home  |  Health  |  Consumer Affairs  |  Environmental Protection  |  Contact Us  |
FAQs  |  Privacy Statement  |  Site Map  |  Search

Copyright © 2001 New York City D.O.F  All rights reserved  - Contact NYCServ (A new window will open)

DEF.00138

PVO Ticket Details

Back to NYCServ ●●●●●●●●●●●●●●●●●●●●●●●●●●●●   *The Official New York City Web Site*

## Check Parking Ticket Status | Ticket Details

**Vehicle Details**

| | | | |
|---|---|---|---|
| Plate: | 63977JS | | |
| State: | New York | Type: | Commercial Vehicle |
| | | Make: | MITSU |

**Ticket Details as of Monday, Apr. 19, 2010 04:39 PM**

| | | | | |
|---|---|---|---|---|
| Ticket #: | 7878545390 | | | |
| Issued On: | 05/01/09 10:38 AM | Fine: | $ | 65.00 |
| Ticket Code: | 20 | Penalty: | +$ | 0.00 |
| Description: | NO PARKING-DAY/TIME LIMITS | Interest: | +$ | 0.00 |
| Location: | In front of | Reduction: | - $ | 0.00 |
| | 755 2ND AVE | Paid: | - $ | 65.00 |
| | Manhattan | | | |
| | | Balance: | $ | 0.00 |

CANCEL          SEARCH FOR PARKING TICKETS

Go to NYC.gov Home | Finance Home | Health | Consumer Affairs | Environmental Protection | Contact Us |
FAQs | Privacy Statement | Site Map | Search

Copyright © 2001 New York City D O F. All rights reserved · Contact NYCServ (A new window will open).

Back to NYCServ ❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖ *The Official New York City Web Site*

# Check Parking Ticket Status | Ticket Details

**Vehicle Details**

| | | | |
|---|---|---|---|
| Plate: | 63977JS | Type: | Commercial Vehicle |
| State: | New York | Make: | MITSU |

**Ticket Details as of Monday, Apr. 19, 2010 04:41 PM**

| | | | | |
|---|---|---|---|---|
| Ticket #: | 7265450139 | Fine: | $ | 115.00 |
| Issued On: | 10/21/09 01:16 PM | Penalty: | +$ | 0.00 |
| Ticket Code: | 51 | Interest: | +$ | 0.00 |
| Description: | SIDEWALK | Reduction: | - $ | .0.00 |
| Location: | In front of | Paid: | - $ | 115.00 |
| | 80 FRANKLIN PL | | | |
| | Manhattan | Balance: | $ | 0.00 |

CANCEL     SEARCH FOR PARKING TICKETS

Go to NYC.gov Home | Finance Home | Health | Consumer Affairs | Environmental Protection | Contact Us | FAQs | Privacy Statement | Site Map | Search

Copyright © 2001 New York City D.O.F. All rights reserved. - Contact NYCServ (A new window will open)

DEF.00140

Back to NYCServ · · · · · · · · · · · · · · · · · · · · · · · · ·   The Official New York City Web Site

## Check Parking Ticket Status | Ticket Details

**Vehicle Details**

| | | | |
|---|---|---|---|
| Plate: | 63977JS | Type: | Commercial Vehicle |
| State: | New York | Make: | MITSU |

**Ticket Details as of Monday, Apr. 19, 2010 05:11 PM**

| | | | | |
|---|---|---|---|---|
| Ticket #: | 7729869974 | Fine: | $ | 115.00 |
| Issued On: | 12/07/09 12:58 PM | Penalty: | +$ | 60.00 |
| Ticket Code: | 48 | Interest: | +$ | 0.00 |
| Description: | BIKE LANE | Reduction: | - $ | 0.00 |
| Location: | Opposite of 270 5TH AVE Brooklyn | Paid: | - $ | 0.00 |
| | | Balance: | $ | 175.00 |

**Ticket Status**

Ticket is past due.

CANCEL            SEARCH FOR PARKING TICKETS

Go to NYC.gov Home | Finance Home | Health | Consumer Affairs | Environmental Protection | Contact Us | FAQs | Privacy Statement | Site Map | Search

Copyright © 2001 New York City D.O.F. All rights reserved · Contact NYCServ (A new window will open)

DEF. 00141

# Parking Tickets | Ticket Detail

## Vehicle Details

| Plate: | 63977JS | Type: | Commercial Vehicle |
|--------|---------|-------|--------------------|
| State: | New York | Make: | MITSU |

### Ticket Details as of Monday, Apr. 19, 2010 04:28 PM

| Ticket #: | 7842542790 | | | |
|-----------|------------|------|-----|-------|
| Issued On: | 01/06/10 11:31 AM | Fine: | $ | 65.00 |
| | | Penalty: | +$ | 0.00 |
| Description: | EXPIRED MUNI METER-COMM METER ZONE | Interest: | +$ | 0.00 |
| Code: | 42 | Reduction: | - $ | 0.00 |
| Location: | In front of | Paid: | - $ | 0.00 |
| | 174 5TH AVE | | | |
| | Manhattan | Balance: | $ | 65.00 |

## Ticket Status

⊕         Hearing held: Guilty

①         Ticket is past due.

[ Print ]

# NYCServ Violation Copy
Internet

||||||| 7729869974 |||||||

## The City of New York
## Notice of Parking Violation

THE CITY DEPARTMENT OF FINANCE MUST RECEIVE YOUR ANSWER TO THIS NOTICE WITHIN THIRTY (30) DAYS FROM THE DATE OF THE VIOLATION. IF YOU FAIL TO ANSWER THIS NOTICE WITHIN 30 DAYS, YOU WILL SHALL BE DEEMED AN ADMISSION OF GUILT. YOUR FAILURE TO ANSWER MAY BE ENTERED AS A DEFAULT JUDGEMENT. MAY BE ENTERED AGAINST YOU. PENALTIES MAY BE ENTERED AS PER SCHEDULE.

| Permit Displayed | Permit Number | Type |
|---|---|---|
| N/S | N/A | N/A |

**Name of the Operator if present. If not present.**
**OWNER OF THE VEHICLE BEARING LICENSE**

| Plate | CD | Exp. Date | State | Plate Type |
|---|---|---|---|---|
| 63977JS | NS | N/S-Miss | NY | COM |

| Make | Color | Year | Body Type |
|---|---|---|---|
| MITS | WHT | N/S | DELV |

VIN #

THE OPERATOR AND OWNER OF THE ABOVE VEHICLE ARE CHARGED AS FOLLOWS

In Violation of Sect. 4-08 (Subsect Below) of NYC Traffic Rules

Bike Lane (e)(9)

**Place of Occurrence**

Opposite 270 5th Ave

| VC | Meter # | Operational | Limit | County | Pct. |
|---|---|---|---|---|---|
| 48 | | | | K | 078 |

| Date/Time of Offense | Date/Time 1st Observed |
|---|---|
| 12/07/09  12:58 PM | N/A |

Complainant's Comments:

**FINE AMOUNT:   $ 115.00**

| Agency | Command | Tax Reg # |
|---|---|---|
| TRAFFIC | T-301 | 346173 |

**Complainant's Name**

SYKES, S

**Signature of Complainant**

x  S Sykes

# NYCServ Violation Copy
## Internet



7842542790

### The City of New York
### Notice of Parking Violation

THE CITY DEPARTMENT OF FINANCE MUST RECEIVE YOUR ANSWER TO THIS NOTICE WITHIN THIRTY (30) DAYS OF THE OFFENSE TO OTHERWISE THE SHERIFF MAY ANSWER THE CITY WILL SEND YOU A NOTICE FILED OR BY MAIL. THE ANSWER TO THIS FINE YOU MAY ALSO BE ASSESSED AND SHALL BE DEEMED AN ADMISSION OF YOUR FAILURE TO ANSWER MAY BE ISSUED ADDITIONAL PENALTIES WILL BE CHARGED AS A YOU ARE REQUIRED MAY BE ENTERED AGAINST YOU. PENALTIES MAY BE CHARGED AS A IN STATE AND SERVICE JUDGMENT DEFAULT OF TRAFFIC

| Permit Displayed | Permit Number | Type |
|---|---|---|
| N/S | N/A | N/A |

### Name of the Operator, if present.  If not present.
### OWNER OF THE VEHICLE BEARING LICENSE

| Plate | CD | Exp. Date | State | Plate Type |
|---|---|---|---|---|
| 63977JS | 6 | 08/31/10 | NY | COM |

| Make | Color | Year | Body Type |
|---|---|---|---|
| MITS | WH | 1997 | DELV |

| VIN # |
|---|
| JW6CCG1G4VL002526 |

THE OPERATOR AND OWNER OF THE ABOVE VEHICLE ARE CHARGED AS FOLLOWS.

In Violation of Sect. 4-08 (Subsect Below) of NYC Traffic Rules

Exp Muni-Mtr Com Mtr Zn (h)(10)
DAYS/HRS: EXCEPT Su/ 7 A- 7 P

### Place of Occurrence
Front of 174 5th Ave

| VC | Meter # | Operational | Limit | County | Pct. |
|---|---|---|---|---|---|
| 42 | 145-7556 | Y | 3 Hr | NY | 013 |

| Date/Time of Offense | Date/Time 1st Observed |
|---|---|
| 01/06/10  11:31 AM | N/A |

Complainant's Comments.

receipt expired at 11 23am

FINE AMOUNT:     $ 65.00

| Agency | Command | Tax Reg # |
|---|---|---|
| TRAFFIC | T-102 | 355450 |

| Complainant's Name |
|---|
| CUNNINGHAM, O |

### Signature of Complainant

X  OaC

EXHIBIT "F"

# EXHIBIT 13

# DAMAGES INFORMATION - MASTER LIST

| Name | Position | Date | Pay Rate-weekly | Hourly Rate Claimed by Defendants | Actual Hourly Rate (40 hr workweek) | Actual Overtime Rate | Dates of Work | Hrs Worked/Day | Hours/Week | OT/Week |
|---|---|---|---|---|---|---|---|---|---|---|
| Richard Merino | Helper | 9/15/2004 | $360.00 | $6.00 | $9.00 | $13.50 | | | | |
| | Driver | 6/16/2005 | $450.00 | $7.25 | $11.25 | $16.88 | | | | |
| | | 6/5/2006 | $480.00 | $7.75 | $12.00 | $18.00 | | | | |
| | | 6/8/2007 | $510.00 | $8.00 | $12.75 | $19.13 | | | | |
| | | 6/2/2008 | $530.00 | $8.25 | $13.25 | $19.88 | 6/2-6/6/2008 | 9 10.25 11 | | |
| | | | | | | | 6/14-6/18/2008 | 10.5 10.75 10.5 12.25 11 | 51.5 | 11.5 |
| | | | | | | | 6/16-6/20/2008 | 10.25 10.75 10.5 | 55.5 | 15.5 |
| | | | | | | | 6/23-6/27/2008 | 9.25 11.25 9.25 | 52 | 12 |
| | | | | | | | 6/30-7/3/2008 | 9.75 10.75 9.5 9.25 | 50.5 | 10.5 |
| | | | | | | | 7/7-7/11/2008 | 10.75 10.75 11.5 9.75 11.5 | 54 | 14 |
| | | | | | | | 7/14-7/18/2008 | 10.25 10.25 9.5 9.75 | 50.5 | 10.5 |
| | | | | | | | 7/21-7/25/2008 | 10.75 10 11 11.25 11.5 | 53.25 | 13.25 |
| | | | | | | | 7/28-8/1/2008 | 11 10.75 10.75 8 11.5 11 10.5 | 52.25 | 12.25 |

| Week | Daily hours | Total | Overtime |
|---|---|---|---|
| 8/4-8/8/2008 | 11.25, 10.5, 11, 10.75, 10.75 | 54.75 | 14.75 |
| 8/11-8/15/2008 | 11, 11.25, 10.75, 10.75, 11 | 54.75 | 14.75 |
| 8/18-8/22/2008 | 10.75, 9.25, 10.75, 11, 11.25 | 52.5 | 12.5 |
| 8/24-8/29/2008 | 11.25, 10, 11.5, 11.25, 9.5 | 55 | 15 |
| 9/1-9/5/2008 | 9.5, 11.5, 11.5, 10.25, 8.5, 11 | 63 | 23 |
| 9/8-9/12/2008 | 11.75, 11.25, 10.25, 9.5, 12, 11.75, 10.5 | 52.75 | 12.75 |
| 9/15-9/19/2008 | 11, 11.75, 11.5, 12, 11 | 54.75 | 14.75 |
| 9/23-9/26/2008 | 11.75, 11.5, 11, 10.25 | 57.25 | 17.25 |
| 9/29-10/03/2008 | 11.25, 10.75, 9.75, 10.75, 9.5 | 43.5 | 3.5 |
| 10/13-10/17/2008 | 9.25, 10, 10.75, 9.75, 9.25 | 49 | 9 |

| Week | Daily values | Total | |
|---|---|---|---|
| 10/20-10/24/2008 | 9.5, 9.75, 10.5, 10.75, 10.25 | 49.25 | 9.25 |
| 10/27-10/31/2008 | 9.5, 10, 10.5, 11.25, 10.25 | 50.75 | 10.75 |
| 11/3-11/7/2008 | 9.5, 9.25, 10.75, 10.25, 10.75 | 50.5 | 10.5 |
| 11/10-11/14/2008 | 10, 9.5, 10, 9.75, 9 | 50 | 10 |
| 11/17-11/21/2008 | 10.25, 10, 8.75, 10, 11 | 49.5 | 9.5 |
| 11/24-11/28/2008 | 9.75, 9.5, 9.75, 9.5, 8.5 | 49.5 | 9.5 |
| 12/1-12/5/2008 | 10.75, 11, 9.75, 9.5 | 28 | 0 |
| 12/8-12/12/2008 | 9.75, 9.5, 9.5, 9.75, 11, 10.25 | 50.5 | 10.5 |
| 12/15-12/19/2008 | 9.75, 9.5, 9.5, 11.5, 10.5 | 48 | 8 |
| 12/22-12/26/2008 | 9.75, 9.5, 11, 10.25, 9.25 | 50 | 10 |
| 12/29-1/2/2009 | 10.25, 9.75, 9.5, 9.75, 10.25, 9 | 41.25 | 1.25 |

| Week | Daily values | Total | Overtime |
|---|---|---|---|
| 1/5-1/9/2009 | 9.5, 9.75, 9.25, 9.5, 9.75 | 38.5 | 0 |
| 1/12-1/16/2009 | 8, 10.75, 11, 10.25, 10 | 46.25 | 6.25 |
| 1/19-1/23/2009 | 10.75, 10.25, 10, 8.25, 8.25, 9.75, 9.5 | 51.5 | 11.5 |
| 1/26-1/30/2009 | 10.25, 10, 9, 11.5, 10 | 48.25 | 8.25 |
| 2/2-2/6/2009 | 9.5, 9.25, 9.25, 8.75, 10.25 | 49.25 | 9.25 |
| 2/9-2/13/2009 | 10, 10, 9.75, 11.5, 9.75 | 46.75 | 6.75 |
| 2/16-2/20/2009 | 9.5, 9.25, 9.25, 10.5, 10.25 | 50.25 | 10.25 |
| 2/23-2/27/2009 | 9.5, 10.5, 10.5, 10, 10.5 | 49.75 | 9.75 |
| 3/2-3/6/2009 | 9.5, 9.5, 10.5, 10.5, 10 | 49 | 9 |
| 3/9-3/13/2009 | 9.5, 9.75, 10.5, 10.5, 10, 9.25 | 49.75 | 9.75 |
| | | 50.25 | 10.25 |

2/19/2010

$9.65

| Date | Values | Sum | |
|---|---|---|---|
| 3/16-3/20/2009 | 10, 11, 10, 10 | 41 | 1 |
| 3/23-3/27/2009 | 10.5, 10.5, 9.75, 9.75, 10, 8.5 | 48.5 | 8.5 |
| 3/30-4/3/2009 | 9.75, 10, 10.75, 10, 9.5, 9.5, 10.25 | 50 | 10 |
| 4/6-4/10/2009 | 10, 10.25, 9.5, 9.75, 9.75 | 49 | 9 |
| 4/13-4/17/2009 | 9.5, 9.5, 9.5, 9.5, 9.5 | 49 | 9 |
| 4/20-4/24/2009 | 10.25, 9.5, 9.5, 10.5, 10.5 | 38.25 | 0 |
| | 10.25, 9.5, 10.25, 10.5, 10.5 | 51 | 11 456.5 |
| 2/15-2/19/2010 | 10, 10.5, 11, 10, 10.5 | 51.75 | 11.75 |
| 2/22-2/25/10 | 10, 10.25, 10, 10.5, 10.5 | 50.75 | 8.75 |
| 3/1-3/5/10 | 10, 10, 10.25, 9.75, 10 | 50.25 | 10.25 |
| 3/8-3/12/2010 | 10, 10.25, 10, 10, 10.25 | 50.25 | 10.25 |

| Name | Role | Date | Amount | | | |
|---|---|---|---|---|---|---|
| Dany Cux Baten | Helper | 6/22/2005 | $360.00 | $6.25 | $9.00 | $13.50 |
| | | 8/22/2005 | $380.00 | $6.50 | $9.50 | $14.25 |
| | | 8/28/2006 | $400.00 | $6.75 | $10.00 | $15.00 |
| Elias Hernandez | Driver | 7/11/2008 | $480.00 | $7.75 | $12.00 | $18.00 |
| Jorge Ome Paez | Driver | 1/2/2007 | $450.00 | $7.25 | $11.25 | $16.88 |
| | | 4/2/2007 | $480.00 | $7.75 | $12.00 | $18.00 |
| | | 4/7/2008 | $500.00 | $7.75 | $12.50 | $18.75 |
| | | 6/2/2008 | $530.00 | $8.25 | $13.25 | $19.88 |

| Week | Hours | Total |
|---|---|---|
| 6/2-6/6/2008 | | |
| 6/18/2008 | 9.5, 10.25, 10.25, 9.75, 10.5, 10.75 | 50.25 |
| 6/20/2008 | 10.5, 10.5, 11.5, 12, 8.75, 11 | 64.5 |
| 6/23-6/27/2008 | 10.75, 10.5, 10.25, 10.25, 9.5, 9.5 | 40.75 |
| 6/30-7/3/2008 | 10, 9.75, 9, 11, 11.75 | 49.25 |
| 7/11/2008 | 10.5, 10.5, 9.5, 9.5 | 42.25 |
| 7/14-7/18/2008 | 10.5, 10.75, 10.75, 10 | 19 |
| 7/21-7/25/2008 | 9.5, 9.5, 10.75, 11 | 50.25 |
| 7/28-8/1/2008 | 10.25, 10.75, 9.5, 11, 10.5, 9.5 | 52.25 |
| | | 42 |

497.5

| Week | Values | Total |
|---|---|---|
| 8/4-8/8/2008 | 10.75, 10.5, 10.25, 9.5, 11 | 52 |
| 8/11-8/15/2008 | 10.75, 10.75, 9.25, 10.75, 10.5 | 52.25 |
| 8/18-8/22/208 | 11, 11.25, 11, 11.25, 11.25, 9.5 | 54.25 |
| 8/29/2008 | 11.25, 11, 11, 11, 9.5, 8.5, 10.25 | 43.25 |
| 9/1-9/5/2008 | 11, 11, 11, 9.5, 11.75 | 52.5 |
| 9/8-9/12/2008 | 11, 10.25, 9.5, 11.75, 11.5 | 52.5 |
| 9/16-9/19/2008 | 10.5, 9.5, 11.75, 11.5, 11.5, 12, 9.5 | 52.75 |
| 9/23-9/26/2008 | 11.5, 11.75, 11.5, 10.25, 9.5 | 44.75 |
| 10/2/2008, 10/17/2008 | 11.25, 11.5, 10.25, 9.75, 10.75, 9.5 | 49.25 |
| 10/24/2008, 10/27-10/31/2008 | 9.5, 9.5, 9.75, 9.75 | 42.5, 9.5 |
| 11/3-11/7/2008 | 11, 13.5, 9.5, 11.5, 10.25, 9.5 | 43.5 |

| Date Range | Hours | Total |
|---|---|---|
| 11/10-11/16/2008 | 9.5, 10, 10, 9.25, 9.5 | 40.75 |
| 11/17-11/21/2008 | 9.5, 10, 10.5, 9.5, 9.5 | 48.75 |
| 11/24-11/28/2008 | 9.25, 11, 9.75, 4.5, 9.75 | 49 |
| 12/1-12/5/2008 | 11.5, 9.5 | 19.75 |
| 12/8-12/12/2008 | 9.25, 9.5, 9, 9.5, 8.5 | 25.75 |
| 12/15-12/19/2008 | 9.75, 9.25, 9.5, 10.25, 9.75 | 46.75 |
| 12/22-12/26/2008 | 9.5, 9.5, 9.5, 9.25, 9.75 | 37 |
| 12/29-1/02/2009 | 8.5, 9.5, 9.75, 10.75, 10.25 | 39 |
| 1/5-1/9/2009 | 9.75, 8.25, 9.5, 9.5 | 19 |
| 1/12-1/16/2009 | 10, 10, 9.5, 9, 9.75 | 46.75 |
| 1/19-1/23/2009 | 9.75, 9.75, 9.5 | 51 |
| 1/26-1/30/2009 | | 47.25 |
| | | 47.75 |

**Arnolfo Grande** — Driver

| | |
|---|---|
| 9/2/2009 | |
| 2/19/2010 | |
| | $480.00 |
| | $8.25 |
| | $8.75 |

| Week | Daily hours | Total |
|---|---|---|
| 2/2–2/6/2009 | 10, 9.25, 9.5, 9.25, 8.5 | 46.5 |
| 2/9–2/13/2009 | 10.5, 10, 9.75, 9.75, 10 | 40.25 |
| 2/16–2/20/2009 | 10.5, 9.5, 9.25, 9.5, 9 | 47.5 |
| 2/23–2/27/2009 | 8, 10.25, 10.25, 10 | 38.5 |
| 2/15–2/19/2010 | 10.25, 10.5, 10.25, 10.5 | 41.5 |
| 2/22–2/26/2010 | 10.5, 9.75, 8.75, 10, 9.75 | 48.75 |
| 3/1–3/5/2010 | 10.5, 10, 10, 9.5, 10 | 50 |
| 3/8–3/12/2010 | 9.5, 10 | 60.75 |
| 3/15–3/19/2010 | 10, 10, 12, 10.75, 11, 10.5 | 54.25 |
| 3/22–3/26/2010 | 10.25, 10.5 | 50 |
| 3/29–4/2/2010 | 10, 10, 9.5, 10.5 | |

**Demetrio R. Mendoza**

Manager

| Date | Rate |
|---|---|
| 6/13/2005 | $580.00 |
| 11/11/2005 | $610.00 |
| 10/30/2006 | $630.00 |
| 11/2/2007 | $660.00 |
| 6/9/2008 | $700.00 |

| Week | Hours | | | | | Total |
|---|---|---|---|---|---|---|
| 4/5-4/9/2010 | 9.75 | 10.5 | 11 | 10.75 | 10 | 52 |
| 4/12-4/16/2010 | 10.75 | 10.5 | 10.5 | 10 | 10.75 | 51.75 |
| 4/19-4/23/2010 | 10 | 10.5 | 10.5 | 10 | 10.5 | 51.25 |
| 4/26-4/30/2010 | 10.5 | 10.25 | 9.75 | 10.5 | 10 | 51 |
| 5/3-5/7/2010 | 10.75 | 10.75 | 11 | 11.5 | 11 | 54.5 |
| 5/10-5/14/2010 | 10.75 | 10.5 | 10.5 | 10 | 10.5 | 51.75 |
| 5/17-5/21/2010 | 10.75 | 10.5 | 10.5 | 10 | 10.5 | 51.25 |
| 5/24-5/28/2010 | 10.75 | 10.5 | 8.25 | 10 | 11 | 52.75 |
| 5/31-6/4/2010 | 11 | 11 | 11 | 11 | | 52.25 |

Rene Aparicio

| Driver | 6/4/2010 | 3/15/2010 | $730.00 | $3.50 |
|---|---|---|---|---|

| Week | Hours | | | | | Total |
|---|---|---|---|---|---|---|
| 3/15-3/19/2010 | 9.5 | 10 | 10 | 10 | 10.75 | 50.25 |
| 3/23-3/26/2010 | 10 | 10.5 | 11 | 12 | 10.5 | 54.5 |
| 3/29-4/2/2010 | 10 | 10 | 10 | 10.5 | | 50 |
| 4/5-4/9/2010 | 10.5 | 10 | 9.5 | 10.5 | .10 | 50 |
| 4/12-4/16/2010 | 11 | 10.75 | 10.5 | 10 | 10.5 | 52.25 |
| 4/19-4/23/2010 | 10.5 | 10 | 10 | 10.5 | 2.75 | 43.75 |
| 4/26-4/30/2010 | 10 | 10.5 | 10.25 | 10.75 | 10.5 | 51.25 |
| 5/3-5/7/2010 | 10.75 | 10 | 11 | 11.5 | 11 | 52 |
| 5/10-5/14/2010 | 10.5 | 10.75 | 10.5 | 10.5 | 10 | 54.75 |
| 5/17-5/21/2010 | 10.5 | 10 | 10.5 | 10.5 | 10.25 | 51.75 |

**Mario Eli Romero**

Helper

$7.25

| Week | Hours | Total |
|---|---|---|
| 5/24-5/28/2010 | 10.75, 10.5, 10.25, 10.75, 11 | 52.25 |
| 5/31-6/4/2010 | 11, 10, 8.25, 11, 11 | 52.5 |
| 4/12-4/16/2010 | 10.5, 10.5, 10, 11, 11 | 52.25 |
| 4/19-4/23/2010 | 10, 10.5, 10.5, 10.25, 10.5 | 51.75 |
| 4/26-4/30/2010 | 10, 9.75, 10.25, 10.5, 10 | 51.25 |
| 5/3-5/7/2010 | 10.75, 10, 11, 11, 11.5 | 51 |
| 5/10-5/14/2010 | 10.5, 10.75, 10.5, 10.25, 10 | 54.75 |
| 5/17-5/21/2010 | 10.5, 10.5, 10, 10.75, 10.5 | 51.75 |
| 5/24-5/28/2010 | 10.5, 10.75, 10.5, 10.5, 11 | 52.25 |
| 5/31-6/4/2010 | 11, 8, 10, 10.75, 11 | 52.75 |

| Jose Duchitango | Helper | 2/15/2010 | $380.00 | | $7.25 | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | $7.25 | | | |

| Week | Hours | | | | | Total |
|---|---|---|---|---|---|---|
| 2/15-2/19/2010 | 11 | | | | | 52 |
| 3/1-3/5/2010 | 10 | 10.5 | 10.75 | 10.25 | 10.25 | 51.75 |
| 3/8-3/12/2010 | 10 | 10 | 9.75 | 10.5 | 10 | 50.25 |
| 3/15-3/19/2010 | 10 | 10 | 10.25 | 10.75 | 10 | 50.75 |
| 3/22-3/26/2010 | 10 | 10 | 10.25 | 12 | 11 | 50.75 |
| 3/29-4/2/2010 | 10.25 | 10.5 | 9.5 | 10 | 10 | 53.25 |
| 4/5-4/9/2010 | 9.5 | 10.5 | 10 | 10 | 10.5 | 50 |
| 4/12-4/16/2010 | 10 | 11 | 10.75 | 10 | 10.5 | 52.25 |
| 4/19-4/23/2010 | 10.5 | 10 | 10.75 | 10 | 10.5 | 51.75 |
| 4/26-4/30/2010 | 10.25 | 9.75 | 10.5 | 10 | | 51.25 |

Luis Martinez — Helper

| Date | Amount | Rate |
|---|---|---|
| 4/28/2008 | $380.00 | $7.25 |
| 6/9/2008 | $400.00 | $7.50 |

| Week | Daily Hours | Total |
|---|---|---|
| 5/3-5/7/2010 | 10, 10.75, 11, 11.5, 11, 10.5 | 51 |
| 5/10-5/14/2010 | 10.75, 10.5, 10.5, 10.5, 10, 10.25 | 54.75 |
| 5/17-5/21/2010 | 10.5, 10.5, 10.5, 10, 10.75, 10.25 | 51.75 |
| 5/24-5/28/2010 | 10.75, 10.5, 11, 10, 8.25 | 52.25 |
| 5/31-6/4/2010 | 11, 11, 11, 11, 8.75 | 52.5 |
| 6/2-6/6/2008 | 10.25, 11.25, 10.25, 9.5, 10.75, 10.5 | 52.25 |
| 6/18/2008 | 12.25, 10.5, 9.5, 10.75, 10.5 | 50 |
| 6/20/2008 | 9.25, 9.5, 9.75, 9.5, 9.25 | 53.5 |
| 6/23-6/27/2008 | 10.75, 10.5, 9.25, 9.5, 9.75 | 50.75 |
| 7/5/2008 | 10.25, 10.75, 10.5 | 48.75 |

| Week | | | | | | Total |
|---|---|---|---|---|---|---|
| 7/7-7/11/2008 | 9.5 | 9.75 | 10.25 | 10.25 | | 41 |
| 7/14-7/18/2008 | 9.5 | 9.5 | 10.5 | 10.5 | 10 / 10.75 | 49.25 |
| 7/21-7/25/2008 | 11 | 10.5 | 10.5 | 11.25 | 9.5 | 51.25 |
| 7/28-8/1/2008 | 11 | 11.5 | 10.5 | 11 | 9.5 | 53 |
| 8/11-8/15/2008 | 11 | 11 | 9.5 | 10.75 | 10.75 | 53.5 |
| 8/18-8/22/2008 | 9.25 | 10.75 | 10.75 | 9.5 | 10.5 | 50.75 |
| 8/11-8/15/2008 | 11.25 | 11 | 11.5 | 11.5 | 9.25 | 54.5 |
| 9/1-9/5/2008 | 11.5 | 11.5 | 11.25 | 8.5 | 9.5 / 11.5 / 11.5 | 51.75 |
| 9/8-9/12/2008 | 11.25 | 9.5 | 11.75 | 11.75 | 12.25 / 10.5 | 55.75 |
| 9/15-9/19/2008 | 11.75 | 11.5 | 9.5 | 11.75 | 11.25 / 11.5 / 9.5 | 55.75 |
| 9/22-9/26/2008 | 11.75 | 12.25 | 12.75 | 9.5 | 9.5 | 55.75 |

| Week | Values | Total |
|---|---|---|
| 9/29-10/3/2008 | 11, 9.75, 9.75, 9.75, 9.5 | 49.75 |
| 10/13-10/17/2008 | 10, 10.75, 9.75, 9.25, 9.5 | 39.25 |
| 10/20-10/24/2008 | 9.5, 10.25, 10.5, 10.5, 9.5 | 50.25 |
| 10/27-10/31/2008 | 11.25, 10.75, 10.75, 10, 9.5 | 50.75 |
| 11/3-11/7/2008 | 9.5, 10.25, 10.75, 9.75, 9.25 | 49.5 |
| 11/10-11/14/2008 | 9.25, 10, 9.75, 9.5, 9.75 | 48.25 |
| 11/17-1/21 | 9.25, 8.5, 10, 10.5, 10.75 | 49.25 |
| 12/8-12/12/2008 | 9.75, 9.25, 9.5, 9.75, 9.5 | 47.75 |
| 12/15-12/18/2008 | 10.25, 9.75, 9.25, 9.75, 9.5 | 49.5 |
| 12/29-1/2/2009 | 9.75, 9, 9.75, 9.5, 9.25 | 38.5 |
| 1/5-1/9/2009 | | |

| Week | Daily Values | Total |
|---|---|---|
| 1/12-1/16/2009 | 9.5, 9.5, 9.75, 10.75, 11, 10.25 | 47.75 |
| 1/19-1/23/2009 | 10, 9.5, 8.5, 9.5, 10, 10.25 | 51.5 |
| 1/26-1/30/2009 | 10, 10, 10.25, 9.25, 9.5, 9.75 | 48.25 |
| 2/2-2/6/2009 | 9, 10, 9.5, 9.5, 9.25, 10 | 47.25 |
| 2/9-2/13/2009 | 10, 10, 9.5, 10.5, 9, 9.25 | 47.25 |
| 2/16-2/20/2009 | 9.5, 9.5, 10, 9.75, 10.5, 10.25 | 50 |
| 2/23-2/27/2009 | 9.5, 13.5, 9.5, 10, 9.25, 10.5 | 48 |
| 3/2-3/6/2009 | 9.5, 10.5, 10, 10.5, 10 | 48.75 |
| 3/9-3/13/2009 | 9.75, 11, 10 | 51.75 |
| 3/16-3/20/2009 | | 50 |

2/19/2010

$7.50

| Week | Prices | Total |
|---|---|---|
| 3/23-3/27/2009 | 10, 9.5, 10.5, 9.75, 10 | 50.25 |
| 3/30-4/3/2009 | 8.5, 10, 9.75, 9.5, 10.5 | 48.25 |
| 4/6-4/10/2009 | 10.25, 9.5, 9.5, 9.75, 10 | 49.75 |
| 4/13-4/17/2009 | 9.5, 9.5, 9.5, 9.75 | 49 |
| 4/20-4/24/2009 | 11.5, 11.75, 11.75, 11.5, 9.5 | 47.75 |
| 2/15-2/19/2010 | 9.5, 11.5, 11.75, 10.25, 10.5 | 56 |
| 3/15-3/19/2010 | 10, 10, 10.5, 10.25 | 51.25 |
| 3/29-4/2/2010 | 10.75, 10, 10, 10 | 50.75 |
| 4/5-4/9/2010 | 9.5, 10, 10.5, 10 | 50 |
| 4/12-4/16/2010 | 10.75, 10, 10.5, 11, 10.25, 10.75 | 52.25 |

**Jesus Mantilla**

| Date | Amount | | | |
|---|---|---|---|---|
| 6/14/2004 | $380.00 | $6.50 | $9.50 | $14.25 |
| 1/2/2005 | $400.00 | $7.00 | $10.00 | $15.00 |
| 3/31/2009 | $420.00 | $7.25 | $10.50 | $15.75 |

| Week | Hours | | | | | Total |
|---|---|---|---|---|---|---|
| 4/13-4/17/2009 | | | | | | |
| 4/20-4/24/2009 | | | | | | 49.75 |
| 4/19-4/23/2010 | 10 | 10 | 10.5 | 10.5 | 10 | 51.5 |
| 4/26-4/30/2010 | 10.5 | 10.25 | 9.75 | 10.5 | 10 | 51.25 |
| 5/3-5/7/2010 | 10.75 | 11 | 11.5 | 11 | 10.75 | 51 |
| 5/10-5/14/2010 | 10.5 | 10.5 | 10.75 | 10.5 | 10.5 | 54.75 |
| 5/17-5/21/2010 | 10.5 | 10.5 | 10.5 | 10 | 10.25 | 51.75 |
| 5/24-5/28/2010 | 10.75 | 10.5 | 11.5 | 11 | 11 | 52.25 |
| 5/31-6/4/2010 | 11 | 8.25 | 10 | 11 | 9.5 | 52.75 |
|  | 9.5 | 11.75 | 9.5 | 9.5 | 9.5 | 52.25 |
|  | 10.25 | 9.5 | 10.5 | 11.5 | 9.5 |  |

**Costes Gabriel**

| Date | Amount | | |
|---|---|---|---|
| 2/1/2005 | $450.00 | $7.25 | 51.25 |
| 5/2/2005 | $475.00 | $7.50 | |

| Name | Role | Date | Salary | Rate | Rate | Rate |
|---|---|---|---|---|---|---|
| Justino Cuenca | Driver | 2/9/2005 | $450.00 | | $7.25 | $17.81 |
| | | 6/13/2005 | $480.00 | | $7.50 | $18.75 |
| | | | | | | $19.50 |
| | | | | | | $20.25 |
| Vazquez Herrera Bernardo | Driver | 6/6/2005 | $475.00 | $7.50 | $11.88 | |
| | | 9/5/2005 | $500.00 | $8.00 | $12.50 | |
| | | 8/7/2006 | $520.00 | $8.25 | $13.00 | |
| | | 1/22/2007 | $540.00 | $8.50 | $13.50 | |
| Jose Antonio Hernandez | Helper | 6/20/2005 | $380.00 | | $6.75 | |
| Paulo G. Morales | Driver | 9/20/2006 | $480.00 | $7.50 | $12.00 | |
| Raul Soto | Helper | 6/26/2006 | $400.00 | | $6.75 | |
| | | 10/30/2006 | $420.00 | | $7.25 | |
| | | 2/19/2007 | $440.00 | | $7.50 | |
| Norverto D.R. | Driver | 1/12/2009 | $450.00 | | $7.50 | $7.50 | $18.00 |

| Week | Hours | Total |
|---|---|---|
| 1/19-1/23/2009 | 9.5 | |
| 1/26-1/30/2009 | 9.75 | |
| | 9 | |
| | 9.5 | 9.5 |
| 2/2-2/6/2009 | 10 | |
| | 9.25 | |
| | 9.5 | |
| | 9.5 | |
| | 9.5 | 47.5 |
| 2/9-2/13/2009 | 9.75 | |
| | 9.5 | |
| | 9.25 | |
| | 8.5 | |
| | 10.25 | |
| | 8.5 | 46.75 |
| 2/16-2/20/2009 | 10 | |
| | 10 | |
| | 9.5 | |
| | 9.5 | |
| | 9.5 | 49 |
| 3/2-3/6/2009 | 9.5 | |
| | 9.5 | |
| | 10.25 | |
| | 10 | 28.5 |
| 3/9-3/13/2009 | 10 | |
| | 9.5 | |
| | 9.5 | |
| | 10.5 | 39.25 |
| 3/16-3/20/2009 | 10.5 | |
| | 9.75 | |
| | 10 | |
| | 9.75 | |
| | 10 | 50.25 |
| 3/23-3/27/2009 | 9.75 | |
| 3/30-4/3/2009 | 11 | |
| | 10 | |
| | 9.75 | 40.5 |

| Name | Role | Date | Amount | Rate |
|---|---|---|---|---|
| Alberto Rios | Driver | 5/6/2009 | $480.00 | $7.75 |
| Adrian Rodriguez | Helper | 4/13/2009 | $380.00 | $7.25 |
| Rafael | | 8/21/2009 | $480.00 | $7.50 |

| Week | Hours | Total |
|---|---|---|
| 4/6-4/10/2009 | 10.75, 9.25, 10.25, 9.5, 10, 9.75, 9.75, 9.5, 8.5 | 49.5 / 47.5 |
| 6/2-6/6/2008 | 9.25, 11.75, 12.5, 9.5, 9.5 | 52.5 |
| 6/9-6/13/2008 | 11, 13.75, 13, 12.5, 9.5 | 59.75 |
| 6/16-6/20/2008 | 11.75, 12.75, 11.5, 11.25, 13 | 60.25 |
| 6/23-6/27/2008 | 6.75, 11.25, 11.25, 11 | 29 |
| 7/3/2008 | 13.5, 11.25 | 50 |
| 7/7-7/11/2008 | 12.75, 11.75, 9.5 | 57.25 |
| 7/14-7/18/2008 | 13, 9.5, 12.25, 9.5, 11.75 | 52.5 |
| 7/21-7/25/2008 | 11.75, 11.25, 9.5, 11, 9.5, 12 | |

| Date Range | Values | Total |
|---|---|---|
| 7/28-8/1/2008 | 12, 12.25, 12.5, 13.25, 12.5, 12.5, 11.75 | 56.75 |
| 8/11-8/15/2008 | 12, 12.75, 12.75, 12.5, 11.75 | 63.25 |
| 8/18-8/22/2008 | 12, 11.75, 12.25, 12.25 | 57 |
| 8/25-8/29/2008 | 12.5, 13, 11.25, 11.5 | 61.25 |
| 9/1-9/5/2008 | 12, 12.5, 8.5, 9.5, 9.5 | 54.75 |
| 9/8-9/12/2008 | 12.25, 12.25, 13.75, 13.5, 13.25 | 45.25 |
| 9/15-9/19/2008 | 12.5, 9.5, 12.5, 13, 12.75 | 62.5 |
| 9/22-9/26/2008 | 12, 13, 10, 12.5, 11.5 | 63.75 |
| 9/29-10/3/2008 | 11.25, 11.5, 12.75, 11.25 | 43.5 |
| 10/13-10/17/2008 | 11.25, 11.25, 12, 10.5 | 58 |
| 10/20-10/24/2008 | 11.25, 10.75, 10, 12, 11.25 | 54.5 |

| Week | Daily values | Total |
|---|---|---|
| 10/27-10/31/2008 | 11, 11.75, 11.25, 11.5, 11.25 | 56.75 |
| 11/3-11/7/2008 | 11.75, 12, 11.25, 11.25, 9.5 | 51 |
| 11/10-11/14/2008 | 9.5, 9.5, 10.5, 10, 9.5 | 52.25 |
| 11/17-11/21/2008 | 9.5, 9.75, 11.25, 11.75, 12.5 | 55.25 |
| 11/24-11/28/2008 | 11.25, 11.75, 10, 11.25, 9.5 | 54.75 |
| 12/1-12/5/2008 | 11.25, 12, 12, 9.75, 11.25 | 31 |
| 12/8-12/12/2008 | 9.75, 12.75, 10.75, 11.25, 11.75 | 46 |
| 12/15-12/19/2008 | 11, 10.25, 9.5, 11.75, 10.25 | 53.25 |
| 12/22-12/26/2008 | 11.5, 9.5, 9.5, 10.75, 11.5 | 55 |
| 12/29-1/2/2009 | 9.5, 10.25, 9.5, 9.75, 10 | 41.25 |
| 1/5-1/9/2009 | 10.25, 9.75, 10, 10.25 | 41.75 |

| Date | Values | Total |
|---|---|---|
| 1/12-1/16/2009 | 11.25, 9.5, 11.75, 12.25, 11.5, 11, 9.5, 11.5 | 50.25 |
| 1/19-1/23/2009 | 11, 9.5, 10.5, 11.75 | 56 |
| 1/26-1/30/2009 | 11, 10, 9.5, 11.25, 11 | 42.75 |
| 2/2-2/6/2009 | 9.5, 10.25, 11 | 51.25 |
| 2/9-2/13/2009 | 11, 11, 10, 12 | 53.25 |
| 2/16-2/20/2009 | 11.25, 9.75, 11.25, 11.5, 11.5 | 46.25 |
| 2/23-2/27/2009 | 11.5, 10.75, 11.5, 12, 10.5, 10.5 | 53.5 |
| 3/2-3/6/2009 | 10.75, 9.5, 11.75, 11.5, 11.75, 10.5 | 54.5 |
| 3/9-3/13/2009 3/23-3/27/2009 | 11.75, 11.25, 11.75, 9.5 | 57 |
| 3/30-4/3/2009 | 11, 10.75, 12.25, 11.25, 11 | 54.75 |

| Date | | | | | | Total |
|------|--|--|--|--|--|-------|
| 4/6-4/10/2009 | 9.5 | 11.5 | 11.5 | 11 | 10.5 | 54.75 |
| 4/13-4/17/2009 | 11.5 | 10.75 | 10.75 | 11.5 | 10 | 54.5 |
| 4/20-4/24/2009 | 9.5 | 9.5 | 11.5 | 11.75 | 9.5 | 52 |
| 3/15-3/19/2010 | 11.75 | 11.75 | 11.5 | 9.5 | | 56 |
| 3/22-3/26/2010 | 11.75 | 11.25 | 11.5 | 10.75 | | 56 |
| 3/29-4/2/1020 | 11.5 | 11.25 | 11.5 | 11.75 | 11.25 | 57.25 |
| 4/12-4/16/2010 | 11.75 | 11.25 | 14.5 | 11.25 | 10 | 54.25 |
| 4/19-4/23/2010 | 11.75 | 12 | 11.75 | 11.25 | 12 | 72.5 |
| 4/26-4/30/2010 | 10.25 | 11 | 11.75 | 11.5 | | 56.75 |
| 5/3-5/7/2010 | 11.75 | 12 | 12.75 | 12.25 | 12.25 | 56 |

Pablo

| Week | Values | Total |
|---|---|---|
| 5/10-5/14/2010 | 11.5, 10.75, 11.75, 11.75, 11, 11, 11 | 60.25 |
| 5/17-5/21/2010 | 11.25, 10.75, 11.25, 11.25, 12 | 55.5 |
| 5/24-5/28/2010 | 10.5, 11.25, 11.25, 11.25 | 57 |
| 5/31-6/4/2010 | 10.75, 12.25, 12.25, 11.75, 10.75 | 56 |
| 6/2-6/6/2008 | 11.25, 11.25, 10.25, 11.25, 10.25 | 55 |
| 6/18/2008 | 11.5, 10.5, 10.75, 10.75, 12.25 | 52.75 |
| 6/20/2008 | 10.75, 10.75, 10.5, 10.5, 9.25 | 55 |
| 6/23-6/27/2008 | 11.25, 9.25, 9.5, 9.25, 9 | 52.25 |
| 7/3/2008 | 10.75, 11.5, 10.5, 10.5, 11.5 | 48.5 |
| 7/7-7/11/2008 | 10.5, 10.75, 10.25, 10.5 | 44.25 |
| 7/14-7/18/2008 | 8.75, 10.25, 10.75 | 40.25 |

**Santonio**

| Date | Values | Total |
|---|---|---|
| 7/21-7/25/2008 | 9.5, 7.25, 9.5, 9.5, 9.5, 11 | 46.5 |
| 7/28-8/1/2008 | 10.25, 9.5, 9.5, 9.5, 9.5, 11.75 | 49 |
| 8/11-8/15/2008 | 13, 10.75, 10.75, 9.25, 10.5 | 44.5 |
| 8/18-8/22/2008 | 11, 11.25, 11.25, 11.25, 11 | 52.25 |
| 8/25-8/29/2008 | 11, 11.25, 11.25, 9.5, 11 | 54.25 |
| 9/1-9/5/2008 | 10.25, 8.5, 9.5, 11, 11.75 | 52.75 |
| 9/8-9/12/2008 | 11.75, 9.5, 9.5, 11.5, 10.5 | 51.75 |
| 9/15-9/19/2008 | 11.25, 9.5, 10.5, 11.5, 11.75 | 52.75 |
| 9/21-9/26/2008 | 12, 9.5, 11.75, 11.5, 11.25 | 56 |
| 10/3/2008 | 10.5, 11, 9.5 | 34.5 |
| 8/1/2008 | | 31 |

| Name | Date | Values | Total |
|---|---|---|---|
| Antonio | 8/4-8/8/2008 | 11, 10.5, 10.5, 11 | 43 |
| Antonio | 8/11-8/15/2008 | 10.75, 10.75, 9.25, 10.5, 9.5 | 50.75 |
| Alex | 8/18-8/22/2008 | 11, 11.25, 11.25, 11.5, 9.5 | 54.5 |
| Alex | 8/11-8/15/2008 | 10.75, 10.75, 10.75, 9.25, 9.5 | 51 |
| Alex | 8/18-8/22/2008 | 9.5, 11.25, 10.75, 10.75, 9.75 | 31.75 |
| Heraldo | 8/29/2008 | 11, 10.5, 9.5 | 31 |
| Geraldo | 9/12/2008 | 12, 11.5, 11.5 | 54.75 |
| Victor | 9/19/2008 | 9.5, 11, 10.25, 10.25, 9.5 | 39.75 |
| Victor | 10/27-10/31/2008 | 9.5, 11, 9.75 | 49.25 |
| Victor | 11/3-11/17/2008 | 9.5, 10.75, 10.25 | 37 |
| Gaiberto | 12/8-12/12/2008 | 9.5, 9.25, 9.5, 9.5 | |
| Gaiberto | 11/10-11/14/2008 | 10.25, 9, 10, 10.25, 9.25 | |

| Name | Date | Hours | Total |
|---|---|---|---|
| Ramirez | 3/9-3/13/2009 | 9.5, 10 | 49 |
| | | 9.5, 9.5, 9.5, 10, 9.5 | 49 |
| Cesar | 3/16-3/20/2009 | 11, 11, 10, 10.25, 9.5 | 51.75 |
| Neira | 2/15-2/19/2010 | 10.5, 10, 10.25 | 20.5 |
| | 2/22-2/26/2010 | 10, 8 | 38.25 |
| Edgar | 2/15-2/19/2010 | 9.5, 9.5, 9.5, 9.5, 10.5, 10.75, 10.25, 10.25 | 52 |
| Tony | 7/18/2008, 7/25/2008 | 10, 11.5 | 47.5 |
| | 7/28-8/1/2008 | 9.5, 9.5, 9.5, 9.5 | |
| | 8/4-8/8/2008 | 11, 10.5, 10.5, 10.75, 9.5, 10.25 | 53.25 |
| | 8/11-8/15/2008 | 10.5, 10.5, 10.5, 9.5, 11, 11.25, 10.25 | 52.25 |
| | 8/18-8/22/2008 | 10.5, 9, 10.5, 11, 11.25, 11 | 51.5 |

| Week | Daily hours | Total |
|---|---|---|
| 8/25-8/29/2008 | 11.25, 11.5, 9.5, 11, 11.25, 10.25, 9.5 | 54.5 |
| 9/1-9/5/2008 | 11.25, 11, 8.25, 11.5, 11 | 53 |
| 9/8-9/12/2008 | 11, 9.5, 11.5, 11.5, 9.5 | 40.25 |
| 9/15-9/19/2008 | 9.5, 11.75, 10.25, 9.5, 11.25 | 52.5 |
| 9/22-9/26/2008 | 9.5, 12.75, 12.5, 12.5, 9.5 | 68 |
| 9/29-10/3/2008 | 11.25, 11.5, 11.5, 11.5, 11 | 44 |
| 10/17/2008 | 10, 10.75, 8.25, 9.5, 9.5 | 47.5 |
| 10/24/2008 | 9.5, 9.5, 10.75, 9.5, 9.5 | 39.25 |
| 10/27-10/31/2008 | 9.5, 9.5, 11.25, 9.75, 9.5 | 38 |
| 11/3-11/7/2008 | 9.5, 9.5, 9.5, 9.5, 9.5 | 40 |
| 11/10-11/14/2008 | 9.75, 9.5, 9.5, 9.75, 9.5 | 38 |

| Week | Daily hours | Total |
|---|---|---|
| 11/17-11/21/2008 | 9.5, 9.5, 10.5, 10.75, 9.75, 8.5 | 48 |
| 11/24-11/28/2008 | 9.75, 8.75, 9.75, 9.5, 9.5 | 49.25 |
| 12/1-12/5/2008 | 9.5, 9.5, 9.5 | 28 |
| 12/8-12/12/2008 | 9.5, 9.5, 9.25, 9.25 | 28.5 |
| 12/15-12/19/2008 | 9.5, 9.5, 11.5, 9.5, 9.5 | 49.25 |
| 12/22-12/26/2008 | 10, 10.75, 9.25, 9.5, 9.5 | 49 |
| 12/29-1/2/2009 | 11.45, 9.5, 9.5 | 30.45 |
| 1/5-1/9/2009 | 10, 8.75, 8.5, 9.25, 9.5, 9.5 | 36.75 |
| 1/12-1/16/2009 | 9.25, 9.5 | 37.5 |

10.3506189 hrs/day for recorded days

752 days over 10  of 1480 days

EXHIBIT "G"

EXHIBIT 24

Page 1

```
 1
 2     UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
 3     ECF CASE
       10 Civ. 0706 (JSR)
 4     - - - - - - - - - - - - - - - - - -x
       RICHARD MERINO, DANY CUX BATEN, ELIAS
 5     ANTONIO HERNANDEZ, and JORGE OREA PAEZ,
       individually and on behalf of all others
 6     similarly situated,,
 7
                   Plaintiffs,
 8
                       -against-
 9
       BEVERAGE PLUS AMERICA CORP., SMC USA
10     CORP., YUN S. CHO, GRAND BEVERAGE CORP.
       and YUN C. CHO,,
11
12                 Defendants.
13     - - - - - - - - - - - - - - - - - -x
14                          500 Pearl Street
                            New York, New York
15
                            June 28, 2010
16                          11:24 a.m.
17
18         DEPOSITION of YUN S. CHO, a Defendant in the
19     above-entitled action, held at the above time and
20     place, taken before Kim Auslander, Registered
21     Professional Reporter and Notary Public of the
22     State of New York, pursuant to the Federal Rules
23     of Civil Procedure.
24
25                    *       *       *
```

Page 2

```
 1
 2     APPEARANCES:
 3

       VLADECK, WALDMAN, ELIAS & ENGELHARD, PC
 4     Attorneys for Plaintiffs
       1501 Broadway
 5     New York, NY 10036
       BY:  ANAND SWAMINATHAN, ESQ.
 6          MAIA B. GOODELL, ESQ.
 7

       YUN S. CHO
 8     Pro Se Defendant
       5887 55th Street
 9     Maspeth, NY 11378
10
11

       ALSO PRESENT:   JULIE WANG;
12                     VLADECK, WALDMAN, ELIAS & ENGELHARD, PC,
13                     YUN C. CHO
14                         *      *      *
15
16
17
18
19
20
21
22
23
24
25
```

Page 56

```
 1                    Y. S. CHO
 2              Looking again at Plaintiff's
 3   Exhibit 7, just for the record, that
 4   document is Bates stamped in the bottom
 5   right-hand corner, it says Defendant's 1.
 6              These are documents that were
 7   provided to plaintiffs by defendants, and we
 8   created a version of these documents just
 9   with a stamp in the bottom corner for ease
10   of use.   This is Defendant's 1.
11       A.       Okay.
12       Q.       Looking at this document,
13   whose handwriting is on this document?
14       A.       This is my handwriting.
15       Q.       Just generally, this document
16   is for Mr. Richard Merino?
17       A.       Yes.
18       Q.       Generally speaking, not just
19   looking at Richard, but for all employees
20   in relation to when they were hired, when
21   was this document created?
22       A.       It varies.   After I hired
23   them, some people I just made this
24   personnel record very next day or some are
25   made about a week later.
```

Page 57

```
 1                    Y. S. CHO
 2      Q.      Why are some made the next day
 3 and some are made a week later?
 4      A.      Because certain people willing
 5 to work but they don't last a couple of
 6 days.
 7      Q.      How often did that happen,
 8 that an employee would only work a couple
 9 of days?
10      A.      If I hire somebody, chances
11 are about 80 percent of people I hired not
12 going to last a couple of days -- I mean
13 didn't last a couple of days.
14      Q.      Just so I understand clearly,
15 almost 80 percent of the time people would
16 only last a few days?
17      A.      Yes.
18      Q.      So it was somewhat rare that
19 employees stayed on for a long period of
20 time?
21      A.      Yes.
22      Q.      The employees who only lasted
23 a couple of days, can you say approximately
24 how many days these employees would be
25 there; would it be one day, five days?  An
```

1                    Y. S. CHO
2    approximation.
3        A.        One day or two days.  Once
4    they decide they couldn't do this work they
5    just quit.
6        Q.        Why did employees leave after
7    just a couple of days?
8        A.        It's too hard.
9        Q.        Is that what they told you?
10       A.        Yes.
11       Q.        Any other reasons you were
12   given for why people were quitting after a
13   few days?
14       A.        Some people got into accident
15   and didn't tell me about it and just left.
16       Q.        Did that happen often or was
17   that a rare sort of thing or something
18   else?
19       A.        It was one of the reasons they
20   work only a couple of days.  Some people
21   say they are really hard work so they can't
22   keep up with it.  Some guys do bad thing
23   and just left.
24       Q.        Any other reasons that people
25   would give you for quitting after a very

Page 62

1                     Y. S. CHO
2    amount?
3         A.      No.
4         Q.      So you said 2004 you made
5    reference to $360 per week.  Was that the
6    fixed amount for drivers?
7         A.      No.  It's for the helpers.
8         Q.      What was the amount for
9    drivers?
10        A.      $450.
11        Q.      This is in 2004?
12        A.      Yes.
13        Q.      Then were they always paid
14   that exact same amount every week, $360 or
15   $450 per week?
16        A.      Yes, and after a few months if
17   they were good I gave them raise.
18        Q.      The $360 per week or the $450
19   per week, for how many hours of work was
20   that paid?
21        A.      It depends, because in
22   beverage business there's a big difference
23   doing work summertime and wintertime.
24               For example, let's say I paid
25   for more than 60 hours a day -- I mean 60

Page 63

Y. S. CHO

1

2     hours a week during the summertime, they

3     work less than 40 hours in wintertime so

4     almost about 20 hours in difference.

5         Q.      So just give me a sense.  What

6     were the hours generally -- let me ask you

7     this first; were the hours for drivers and

8     helpers the same or were they different?

9         A.      Same.  They come the same time

10    and leave at the same time.

11        Q.      Okay.  So in the summertime

12    approximately what were the hours of the

13    drivers and helpers?

14        A.      Between 55 to 60, 62 or 63 --

15    63 hours.  No, no, no.  I'm sorry.  It's

16    with the overtime.

17             For your understanding, 40

18    hours is regular hours and on top of that

19    during the summertime they work about 10 to

20    13 hours more.

21        Q.      In the summer they work 10 to

22    13 hours more than 40 hours?

23        A.      Yes.

24        Q.      So between 50 and 53 hours?

25        A.      Yes.  The hours I mentioned

Page 90

Y. S. CHO

1

2     Q.     The calculation that you just

3 described to me where you take their hours,

4 the calculation you described to me in the

5 remarks section, was that something you

6 ever discussed with the workers?

7     A.     No, because they already

8 agreed to fixed amount of money.

9     Q.     Did you ever have discussions

10 with the workers about overtime pay?

11     A.     No.

12          MR. SWAMINATHAN:  Why don't we

13     take a break.

14          (A lunch recess was taken.)

15     Q.     Are you ready?

16     A.     Yes.

17     Q.     We are back from a lunch

18 break.  Do you understand you continue to

19 be under oath currently?

20     A.     Yes, I do.

21     Q.     I want to follow up on a few

22 issues from the morning.

23          You said that some documents

24 were destroyed in April when they were --

25 after they were taken from the offices?

```
1                    Y. S. CHO
2         Q.       Did you talk to them about
3    overtime?
4         A.       No.
5         Q.       When you spoke to the workers
6    about their wages, was there anything put
7    in writing?
8         A.       No.
9         Q.       Was anything put in writing
10   based on your interviews with workers?
11        A.       No.
12        Q.       If your interview had gone
13   well, would you hire them right away?
14   Would you call them back later?  What would
15   you do next?
16        A.       I would tell them to come next
17   day or next Monday.
18        Q.       Would you have them fill out
19   any forms or anything?
20        A.       No, not at that time, because
21   they might just quit or don't show up next
22   day or following Monday.
23        Q.       Is there some point where you
24   would have them fill out some information?
25        A.       Yeah.  I mentioned earlier,
```

1                    Y. S. CHO

2    ridiculous.

3        Q.        You've talked about your

4    discussions with workers about their wages.

5                  Have you taken any steps to

6    ensure that the wages that you pay your

7    employees are in compliance with the law?

8        A.        Just I explained how many

9    hours he's going to work, I explained to

10   them, and how much I'm going to pay.

11                 Also I mention if you get this

12   much money for this time you are working

13   then it will be approximately how much for

14   hour.  I explain to all the guys.

15       Q.        Other than your conversations

16   with the workers about how you were going

17   to pay them and how much you were going to

18   pay them and how many hours they would work

19   for that pay, did you take any steps to

20   ensure that whether or not you were

21   agreeing to with the workers was in

22   compliance with the law?

23       A.        I believe I complied with the

24   law, because I never paid less than minimum

25   wage or overtime, I always calculate those

Page 224

Y. S. CHO

1
2    things I have to pay.

3             That's why I explained all
4    those things to my guys when I have
5    interview with them.

6       Q.       I understand that you are
7    saying now that you believe you were in
8    compliance.  What steps did you take in
9    order to ensure that you were in
10   compliance?

11      A.       What do you mean by what
12   steps?

13             I told you before, I explained
14   how many hours he's going to work for the
15   pay.

16      Q.       Right.  I'm not talking about
17   your conversations with the workers.  I am
18   asking you, did you have any conversations
19   with anyone other than the workers to
20   ensure that whatever wage policies you had
21   with your workers were in compliance with
22   the law.

23      A.       No.  Who should I talk to?
24   No.

25      Q.       Did you ever speak to any

YUN S. CHO

Page 268

1
2      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
3      ECF CASE
       10 Civ. 0706 (JSR)
4      - - - - - - - - - - - - - - - - - -x
       RICHARD MERINO, DANY CUX BATEN, ELIAS
5      ANTONIO HERNANDEZ, and JORGE OREA PAEZ,
       individually and on behalf of all others
6      similarly situated,,
7
               Plaintiffs,
8
                   -against-
9
       BEVERAGE PLUS AMERICA CORP., SMC USA
10     CORP., YUN S. CHO, GRAND BEVERAGE CORP.
       and YUN C. CHO,,
11
12             Defendants.
13     - - - - - - - - - - - - - - - - - -x
14                        500 Pearl Street
                          New York, New York
15
                          June 29, 2010
16                        11:24 a.m.
17
18         CONTINUED DEPOSITION of YUN S. CHO, a Defendant
19     in the above-entitled action, held at the above time
20     and place, taken before Kim Auslander, Registered
21     Professional Reporter and Notary Public of the State
22     of New York, pursuant to the Federal Rules of Civil
23     Procedure.
24
25                    *      *      *

YUN S. CHO

Page 269

1

2     APPEARANCES:

3

      VLADECK, WALDMAN, ELIAS & ENGELHARD, PC
4     Attorneys for Plaintiffs
      1501 Broadway
5     New York, NY 10036
      BY:  ANAND SWAMINATHAN, ESQ.
6          MAIA GOODELL, ESQ.

7

      YUN S. CHO
8     Pro Se Defendant
      5887 55th Street
9     Maspeth, NY 11378

10

11

      ALSO PRESENT:  JULIE WANG;
12                   VLADECK, WALDMAN, ELIAS & ENGELHARD, PC

13

14                   *     *     *

15

16

17

18

19

20

21

22

23

24

25

YUN S. CHO

1

2    they shouldn't go there but sometimes they

3    do, or red lights or speeding, those are

4    moving violations.

5        Q.      In those instances you said

6    the driver is liable?

7        A.      Yeah, of course.

8        Q.      So because the driver was

9    liable that's why you would have them pay

10   the tickets?

11       A.      Yeah.  Richard Merino gets

12   various moving violations.  He went through

13   the area that he shouldn't go.

14              There's so many places you

15   shouldn't go with the trucks unless there's

16   a local delivery.

17       Q.      What about would they also be

18   liable when it was a parking ticket?

19       A.      No.

20       Q.      Why do you say that the driver

21   is not liable when it is a parking ticket?

22       A.      Only reason I told them if you

23   get a parking violation -- there's so many

24   different park violations, there's various

25   ways of parking violation.  For example, if

YUN S. CHO

Page 297

2  they double-parked but depends on area, if

3  you park the truck uptown or downtown it's

4  okay, it's legal to double-park if there is

5  no parking space, but midtown you can't.

6  You can't double-park at all, no matter

7  what.  You have to find a parking space.

8          But when those guys get a

9  double-parking ticket, I take care of it.  I

10  try to send a letter to plead not guilty.

11  Also traffic lane ticket, it's okay, the

12  same as a double-parking ticket.

13          But when driver go through the

14  prohibited area, like a fire hydrant, bus

15  lane or crossing, bike lane, those areas

16  they shouldn't be there.  They don't have to

17  be there.

18      Q.      Those things you described;

19  fire hydrants, bus lanes and so on, those

20  were moving violations or parking

21  violations?

22      A.      Parking violations.

23      Q.      In those instances where they

24  were parking by a bus lane or fire hydrant

25  and they got a ticket would you take

YUN S. CHO

Page 298

1

2   deductions for those?

3        A.      No, I didn't.  I keep saying

4   if you do the violation, next time I will

5   deduct the money, but I never did.

6        Q.      So even though in those cases

7   it was also their fault, when they parked

8   when there was no double-parking in midtown

9   or when they parked in front of a fire

10  hydrant or bus lane, in those instances you

11  would say it was their fault, they were

12  liable, right?

13       A.      Yeah, of course.  They don't

14  have to go to bus lane.  Why they stop

15  their truck on bus lane?  Bus stops or fire

16  hydrant, why they have to block fire

17  hydrant or block crossings?  They don't

18  have to do that.

19       Q.      When they did that, when they

20  parked in these places, when they didn't

21  need to go there and park in those places,

22  would you take deductions from them?

23       A.      What do you mean?

24       Q.      Would you take deductions in

25  their paychecks in those instances?

Page 1

```
1
2     UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
3     ECF CASE
      10 Civ. 0706 (JSR)
4     - - - - - - - - - - - - - - - - -x
      RICHARD MERINO, DANY CUX BATEN, ELIAS
5     ANTONIO HERNANDEZ, and JORGE OREA PAEZ,
      individually and on behalf of all others
6     similarly situated,,
7
              Plaintiffs,
8
                   -against-
9
      BEVERAGE PLUS AMERICA CORP., SMC USA
10    CORP., YUN S. CHO, GRAND BEVERAGE CORP.
      and YUN C. CHO,,
11
12            Defendants.
13    - - - - - - - - - - - - - - - - -x
14                        500 Pearl Street
                          New York, New York
15
                          June 24, 2010
16                        9:00 a.m.
17
18        DEPOSITION of YUN C. CHO, a Defendant in the
19    above-entitled action, held at the above time and
20    place, taken before Kim Auslander, Registered
21    Professional Reporter and Notary Public of the State
22    of New York, pursuant to the Federal Rules of Civil
23    Procedure.
24
25                    *      *      *
```

Page 2

1

2    APPEARANCES:

3

     VLADECK, WALDMAN, ELIAS & ENGELHARD, PC

4    Attorneys for Plaintiffs

     1501 Broadway

5    New York, NY 10036

     BY:  MAIA B. GOODELL, ESQ.

6         ANAND SWAMINATHAN, ESQ.

7

8    YUN C. CHO

     Pro Se Defendant

9    5887 55th Street

     Maspeth, NY 11378

10

11

12   ALSO PRESENT:  EMILY ALDRIDGE;

                     VLADECK, WALDMAN, ELIAS & ENGELHARD, PC

13

14                    *      *      *

15

16

17

18

19

20

21

22

23

24

25

Page 80

1                           Y. C. CHO

2    him that.

3          Q.      To your knowledge, there was

4    no practice of discussing overtime pay with

5    employees that were hired?

6          A.      That's correct.

7          Q.      And there still is not such a

8    practice?

9          A.      No.

10         Q.      Do you have any documents

11   reflecting agreements with any of the

12   workers at Beverage Plus about pay?

13         A.      I think when I see --

14               (Pause.)

15         A.      I have here --

16         Q.      You are looking at a personnel

17   record?

18         A.      I can see the defendant's

19   response to plaintiff's first set of

20   interrogatories.

21               At the time when I submit the

22   pieces of paper I attached on Exhibit B, I

23   put the time record with my employees.

24         Q.      Other than the documents that

25   you attached in your responses to us, are

Page 122

1                        Y. C. CHO

2        A.        My brother pays it at this

3   moment, because I don't know each figure,

4   so my brother controls for time card

5   payment.

6        Q.        Is it your understanding that

7   the workers are currently paid on an hourly

8   basis, a weekly basis, something else?

9        A.        They receive every week.

10  Weekly basis.  They receive salary every

11  week.

12       Q.        They are paid a salary every

13  week?

14       A.        Yes.

15       Q.        Do they receive compensation

16  for overtime?

17       A.        Yes.

18       Q.        How does that work?  How do

19  you calculate --

20       A.        The time card.  As you can

21  see, the defendant's response to

22  plaintiff's first set of interrogatories, I

23  attach Exhibit B, the time card with the

24  amount of payment for weekly salary that

25  they have time cards, so I can see how many

Page 229

Y. C. CHO

1
2    of product from the retailer and then how
3    to control the people and then about the
4    general information to run the business.
5         Q.      It's your testimony that you
6    took over the business on March 13, the
7    date after Richard Merino was fired; is
8    that right?
9         A.      Yeah.
10               (Plaintiff's Exhibit 17 marked for
11               identification.)
12        Q.      Plaintiff's Exhibit 17 is
13   three pages.  The first page is titled
14   application for the court to request
15   counsel.  It's dated March 19, 2010.
16               Is that your signature,
17   Mr. Cho?
18        A.      Yes, it's true.
19        Q.      And then the next two pages
20   are a request to proceed in forma pauperis.
21   It's also signed by you?
22        A.      Yes, it's true, 19th day of
23   March, 2010.
24        Q.      Paragraph two on the first
25   page says:  I will close down my business

Page 1

```
 1
 2      UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
 3      ECF CASE
        10 Civ. 0706 (JSR)
 4      - - - - - - - - - - - - - - - - - -x
        RICHARD MERINO, DANY CUX BATEN, ELIAS
 5      ANTONIO HERNANDEZ, and JORGE OREA PAEZ,
        individually and on behalf of all others
 6      similarly situated,,
 7
                 Plaintiffs,
 8
                      -against-
 9
        BEVERAGE PLUS AMERICA CORP., SMC USA
10      CORP., YUN S. CHO, GRAND BEVERAGE CORP.
        and YUN C. CHO,
11
12               Defendants.
13      - - - - - - - - - - - - - - - - - -x
14                      500 Pearl Street
                        New York, New York
15
                        July 1, 2010
16                      11:42 a.m.
17
18          DEPOSITION of DEMETRIO RAFAEL MENDOZA, a
19      non-party Witness in the above-entitled action, held
20      at the above time and place, taken before Kim
21      , Registered Professional Reporter and
22      Notary Public of the State of New York, pursuant to
23      the Federal Rules of Civil Procedure.
24
25                    *      *      *
```

1

2     APPEARANCES:

3

      VLADECK, WALDMAN, ELIAS & ENGELHARD, PC

4     Attorneys for Plaintiffs

      1501 Broadway

5     New York, NY 10036

      BY:  ANAND SWAMINATHAN, ESQ.

6          MAIA B. GOODELL, ESQ.

7

      YUN S. CHO

8     Pro Se Defendant

      5887 55th Street

9     Maspeth, NY 11378

10

11

      ALSO PRESENT:  MARISA ROTHSTEIN;

12                   VLADECK, WALDMAN, ELIAS & ENGELHARD, PC,

13                   YUN C. CHO

14                        *     *     *

15

16

17

18

19

20

21

22

23

24

25

Page 22

1                        D.R. MENDOZA

2          A.        No.

3          Q.        When he does communicate with

4     the workers once in a while, what language

5     does he communicate with them in?

6          A.        English.

7          Q.        Do the workers speak English?

8          A.        Yes.

9          Q.        All of them?

10         A.        Well, not all of them.  Maybe

11    one or two they don't talk good English,

12    but they can communicate.

13         Q.        You said one or two.  One or

14    two could communicate or --

15         A.        One or two cannot communicate

16    well, but their English is understandable.

17         Q.        How many total workers are

18    there currently?

19         A.        Currently we have -- so far we

20    have about five.  Getting busy sometimes,

21    when it's busy we get up to eight.

22         Q.        When is it busy?

23         A.        Summertime.

24         Q.        When you say summertime, what

25    months?